### GLENMORE SECURITIES CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

### No. 54.

Circuit Court of Appeals, Second Circuit.

Jan. 9, 1933.

Lawrence A. Baker and Henry Ravenel, both of Washington, D. C., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Hayner N. Larson, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and John D. Foley, Sp. Atty., Bureau of Internal Revenue, both of Washingtonn, D. C., of counsel), for respondent.

Laurence Arnold Tanzer, of New York City, amicus curiæ.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

This is a companion case to Wild v. Commissioner (C. C. A.) 62 F.(2d) 777, handed down at the same time, and so far as the main question goes, has already been disposed of. The only year which requires separate consideration is 1925; and for the following reasons: In that year the syndicate ·manager repaid to the taxpayer, which was a member, $40,000, its original contribution, along with $2,000 interest. Of this it

returned only the interest, on the theory that under the contract nothing else was profits, and only profits could be income. The syndicate agreement had provided that the manager should first repay to the members their capital, and the manager's cheque designated the payment as capital and interest; both sides so intended it. The Commissioner in assessing the deficiency, took the total profits of the syndicate, estimated as though it were a partnership, and allocated to each member three-quarters of his proper proportion, as income for the year. This came to less than the amount actually distributed. The quarter which he did not assess, he deducted as commissions of the manager, though it was not yet available as such. Assuming, as we must, that the syndicate was not a partnership, we are to decide whether nevertheless the taxpayer has shown that it was overassessed.

Two possibilities are open; the syndicate may have been an association, taxable as a corporation; or it may have been a trust. In the first case the statute ascribes the first payments upon partial distribution to the latest earnings, until they are exhausted. Section 201 (b), (c) of the Act of 1924 (26 USCA § 932 (b, c). The decisions cover such a situation, and would have allowed an assessment of the whole payment as income, provided it did not impair the capital, as it did not. McCaughn v. McCahan, 39 F.(2d) 3 (C. C. A. 3); Leland v. Commissioner, 50 F.(2d) 523 (C. C. A. 1); Phelps v. Commissioner, 54 F.(2d) 289, 292 (C. C. A. 7); Chistopher v. Burnett, 60 App. D. C. 365, 55 F.(2d) 527. The only doubt that can arise is in case the syndicate be considered a trust. In that event the profits accumulated by the manager, who would be the trustee, would be assessable as his income (section 219 (b), 26 USCA § 960 note), and those distributed to the members would be assessable as their income. It is conceded that profits were "realized" by the manager, equal to all the amounts actually distributed. Being taxable income, assessable against one or the other, no agreement between them could affect their character. Merchants' L. & T. Co. v. Smietanka, 255 U. S. 209, 41 S. Ct. 386, 65 L. Ed. 751, 15 A. L. R. 1305; Burnet v. Logan, 283 U. S. 404, 51 S. Ct. 550, 75 L. Ed. 1143, decided only that upon a sale there are no profits until the consideration has repaid the "base," on which profit is to be computed. In Burnet v. Whitehouse, 283 U. S. 148, 51 S. Ct. 374, 75 L. Ed. 916, 73 A. L. R. 1534, payments were made to an annuitant in part out of income, but were not assessed against her, because the annuity was charged against the estate as a whole; they were treated as a series of pecuniary bequests. The court did not consider the case as a trust within section 219 (26 USCA § 960 note); had it done so, we have no reason to suppose that the result would have been the same.

This does not, however, determine whether what the manager distributed came from income or capital, both of which were in his hands. The record is silent; he may have in fact retained enough income to supply the place of the capital, and distributed the capital; he may have done just the opposite; doubtless he did not care. However, on well settled principles, the taxpayer has the burden of showing that he has been wronged. Since it does not appear that the distribution up to the amount of the assessment was not in fact paid out of profits, we cannot say that it was not, and the case fails pro tanto. The fact that the manager called it capital does not in our judgment tend to show that in fact he took it from capital; he was merely following the agreement by which he was first to pay back capital; for that purpose the source was neutral. It is possible that the whole fund had been reduced to cash in one account, and that the manager merely drew from it generally; it is possible that a substantial part was from rents and interest. As between the parties their intent would no doubt control, but not as against the Treasury. Whether in such a case the rule of allocation prescribed by section 201 (b) should be adopted, we need not say; it is enough here that no effort was made to show from what source the payments came. It follows that the assessment for 1925 was right, though not those for 1926 and 1927. For this reason the order must be reversed and the deficiencies for those years annulled.

Order reversed.