# HEINZ v. COMMISSIONER OF INTERNAL REVENUE.

## No. 7277.

Circuit Court of Appeals, Fifth Circuit.

April 25, 1934.

Theodore B. Benson, of Washington, D. C., and D. J. Gantt, of Atlanta, Ga., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., and E. Barrett Prettyman, Gen. Counsel, Bureau of Internal Revenue, and George D. Brabson, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before BRYAN, FOSTER, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

This is a petition for a review of the final redetermination by the Board of Tax Appeals of a deficiency of income taxes against the petitioner for the year 1928. That redetermination, so far as it is now complained of, was the result of rulings by the Board mentioned below.

■ The Board of Tax Appeals made findings of fact, which findings, so far as material to the questions presented, were as follows: "The Petitioner  *  *  * made his income tax return for the taxable year 1928 on the basis of cash receipts and disbursements.  *  *  * Early in 1928 the petitioner became a member of a syndicate or partnership organized primarily to deal in Coca-Cola stock. The members shared in the losses or profits in the proportion of their respective holdings.

"The petitioner delivered to the syndicate 1,000 shares of Coca-Cola stock, indorsed in blank or otherwise transferred to the syndicate or a nominee, and authorized the syndicate to buy and sell said stock on his account to the best advantage, solely in its discretion.

"Included in the 1,000 shares of Coca-Cola stock which the petitioner delivered to the syndicate were 100 shares which petitioner purchased in 1920 at a cost of $2,100, and also 100 shares issued to the petitioner as a stock dividend. Petitioner placed no restrictions whatever in writing on the sale or disposition of this stock, which was indorsed in blank, but understood when he turned it over that the syndicate had the right to dispose of it as it saw fit. There was no earmarking or identification whereby any of the shares delivered by the petitioner to the syndicate could be differentiated or treated differently from any other shares.

"The syndicate continued its operations until November, 1928. Its last sale was made on November 16, 1928, after which date it proceeded to wind up its affairs. On the last mentioned date the syndicate advised petitioner by letter that 800 shares of Coca-Cola stock had been sold for his account, check for the proceeds being enclosed therewith. The syndicate also advised the petitioner that 200 shares of said stock would be returned to him, and requested him to advise in whose name he wished the certificate for the 200 shares to be issued.

"On December 26, 1928, the syndicate again wrote to the petitioner, advising that it had been necessary to purchase 45 shares of Coca-Cola stock in order to deliver to him

the 200 shares referred to in the prior letter, and enclosing check in settlement of those transactions. In the same letter the syndicate stated that it hoped to send petitioner a check in final settlement of 'interest and dividend adjustment' prior to January 1, 1929. Petitioner actually received a check from the syndicate on February 26, 1929, for $4,391.-60 in settlement of said 'interest and dividend adjustments,' which amount respondent included in the petitioner's gross income for the taxable .year 1928." The record does not contain the evidence adduced before the Board of Tax Appeals.

The Board decided that the above-mentioned amount of $4,391.60, for which petitioner received · a check on. February 26, 1929, and which represented "interest and dividend adjustments," and was the final distribution of profits upon termination of the syndicate's operations, constituted income to the petitioner for the year 1928. In support of his challenge of that ruling the petitioner invokes the decisions in the cases of Wild v. Commissioner (C. C. A.) 62 F.(2d) 777, and Glenmore Securities Corporation v. Commissioner (C. C. A.) 62 F.(2d) 780. In the first cited case the court decided that earned, but undistributed, income of a member of an investment syndicate using contributions of its members to buy, hold, and sell securities and land was not taxable against the member. The facts of that case are materially different from those of the instant one. The syndicate which was under consideration in that case derived its funds from the contributions of its members, those funds being made subject to use by the syndicate manager, a corporation, to buy and "manage" specified securities, and for whatever else it thought "advisable," and the syndicate was to last until the manager ended the venture at its pleasure, when it should distribute all the capital and profits, though it might make "partial distribution" earlier. The manager did not distribute all the profits made in the years in question, 1923 and 1925, and retained the undistributed profits for future investment, or eventual distribution. The facts of the other cited case were similar. In the instant case the syndicate was organized in 1928, and its operations were discontinued in November of that year. What it, thereafter held was not held for future investment or trading, but was held for the purposes of settling the business of the syndicate and making distributions among its members. From the time the syndicate ceased to be a going concern, the undistributed profits were owned by the members of the syndicate, and were held by the syndicate head or manager as agent for the members. Whether the syndicate was or was not a partnership, the relation of the members of the syndicate to its undistributed profits was quite similar to that of partners to profits of the partnership. If technically a partnership relation existed among the members of the syndicate, by express provision of the statute (section 182, Revenue Act of 1928, 45 Stat. 791, 840 [26 USCA § 2182]), such partner's distributive share of the net income, whether distributed or not, was required to be included in his gross income. Even if, while the operations of the syndicate were in progress, property belonging to it was held in trust, and the head or manager of the syndicate was a fiduciary, within the meaning of section 161 of the Revenue Act of 1928 (45 Stat. 838, 26 USCA § 2161), after the termination of the operations of the syndicate, the undistributed profits were not taxable against the syndicate or its head, because they were not, within the meaning of that section, "income which, in the discretion of the fiduciary, may be either distributed to the beneficiaries or accumulated." Whether, while the syndicate was in operation, the existence of it did or did not stand in the way of the petitioner having title to a share of the undistributed profits, upon the termination of the syndicate's operations during the year 1928, the petitioner was the beneficial owner of his share of the undistributed profits. Whether the syndicate was a partnership or another kind of joint venture prior to the end of the year 1928, the petitioner, as to sharing in the undistributed profits, had the actual benefit for which the tax was assessed. Corliss v. Bowers, 281 U. S. 376, 50 S. Ct. 336, 74 L. Ed. 916. The petitioner's beneficial ownership of his share of the undistributed profits having attached during the year 1928, the amount thereof was properly included in his gross income for that year, though that amount was not definitely ascertained until after the expiration of that year. Dickey v. Commissioner (C. C. A.) 56 F.(2d) 917, certiorari denied, 287 U. S. 606, 53 S. Ct. 10, 77 L. Ed. 527. It was not open to the petitioner or his agent, the syndicate or its manager, to avoid the inclusion in his gross income for 1928 of his share of the syndicate's undistributed profits by postponing beyond the end of that year the ascertainment of the exact amount of that share or the actual delivery to the petitioner of the amount of profits to which he was entitled. Wright v. Commissioner (C. C. A.) 50 F.(2d) 727; Newman v. Commissioner (C. C.

A.) 41 F.(2d) 743; Webb v. Commissioner (C. C. A.) 67 F.(2d) 859.

The petitioner contributed to the syndicate 1,000 shares of Coca-Cola stock. The syndicate sold 800 shares of that stock for petitioner's account, and returned to petitioner 200 shares of that stock. The Board of Tax Appeals, after finding as a fact that the particular shares of stock which were sold for petitioner's account could not be identified, approved the action of the respondent in determining the net profit from that sale by applying the following provision of Article 58 of Treasury Regulation 74, which is usually referred to as the "first-in, first-out" rule: "When shares of stock in a corporation are sold from lots purchased at different dates and at different prices and the identity of the lots cannot be determined, the stock sold shall be charged against the earliest purchases of such stock. * * *" After the decision of the Board was promulgated, by a motion for a review by the Board of that decision, the petitioner challenged the findings of fact upon which was based the Board's ruling as to the determination of the net profit on the sale of 800 shares of stock for petitioner's account. The ground of that challenge stated in that motion was that those findings were not in accord with the evidence adduced in the hearing before the Board. That motion contained sundry statements as to testimony given in the hearing, and to that motion was attached an exhibit which purported to be a written record of, or account book entries as to, Coca-Cola stocks purchased and sold by the petitioner in the year 1928. The transcript before us contains that motion and the exhibit thereto. Neither the statements in that motion as to evidence, nor what is contained in the mentioned exhibit, was in any way authenticated by the Board of Tax Appeals nor made a part of the record to be reviewed by this court. Papers or documents called to the attention of the tribunal below are not before this court for consideration unless they are made part of the record by bill of exceptions, statement of evidence, or in some other proper mode. Bassing v. Cady, 208 U. S. 386, 28 S. Ct. 392, 52 L. Ed. 540, 13 Ann. Cas. 905; 4 C. J. 59. The statements or showings of evidence contained in the above-mentioned motion and the exhibit thereto are not considered by this court, because they are wholly unauthenticated and in no proper way were made part of the record presented for review. As the record does not contain the evidence which was before the Board of Tax Appeals when it made its finding that the particular shares of stock sold by the syndicate for the account of the petitioner could not be identified, we must accept that finding as conclusive. Commissioner of Internal Revenue v. Continental Screen Co. (C. C. A.) 58 F.(2d) 625. The record furnishes no basis or support for the petitioner's contention that that finding was not in accordance with the evidence. It is not controverted that on the state of facts found by the Board its determination of the gain derived from the sale of petitioner's shares of stock was proper.

The petition for review is denied.