**MORSMAN v. COMMISSIONER OF INTERNAL REVENUE.**

No. 10621.

Circuit Court of Appeals, Eighth Circuit.

April 30, 1937.

Rehearing Denied May 21, 1937.

GARDNER, Circuit Judge, dissenting.

---

Edgar M. Morsman, Jr., of Omaha, Neb. (Edgar M. Morsman, III, of Omaha, Neb., on the brief), for petitioner.

Joseph M. Jones, Sp. Asst. to Atty. Gen. (Robert H. Jackson, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals which sustained the action of the Commissioner of Internal Revenue determining a deficiency in petitioner's income tax for 1929 in the amount of $5,440.70.

The question for decision is whether the profit realized from the sale of certain securities was taxable to the petitioner individually or to an alleged trust entity created by him.

The facts giving rise to the controversy are as follows: The petitioner executed an instrument captioned "Trust Agreement" on January 28, 1929, in which he named himself as trustee and provided that the United States Trust Company should be successor trustee. He was then president of the trust company and maintained his office at its place of business. The so-called trust agreement reads thus:

"Know all Men by These Presents:

"That I, Robert P. Morsman, of Omaha, Douglas County, Nebraska, do hereby declare that I hold the property hereinafter mentioned in trust for the uses and purposes hereinafter set forth, and to that end I do hereby sell, assign, transfer, and set over to myself as trustee the following described goods, bonds, credits, securities, and property, to-wit:

100 shares A. T. & T. Co.

600 shares International Utilities Pfd. B.

To Have And To Hold said goods, bonds, credits, securities, and property unto said Robert P. Morsman, his successors and assigns, but in trust, and for the uses and purposes and upon the conditions as follows, to-wit:

(1) The United States Trust Company shall be the successor in trust. At any time prior to January 1, 1939, the trustee, Robert P. Morsman, may turn over to the United States Trust Company the trust funds and property, and thereupon said United States Trust Company shall become trustee hereunder, and said Robert P. Morsman shall cease to be trustee. On January 1, 1939, it shall be the duty of said Robert P. Morsman to turn over the trust fund and property to the United States Trust Company as successor in trust to the said Robert P. Morsman.

(2) The creator of this trust may, from time to time, turn over to the trustee additional funds and property and thereupon such additional funds and property shall be and become part of the trust hereby created, subject to all the terms and conditions hereof.

(3) The income of said fund and property shall remain undistributed up to January 1, 1934, and shall, up to said date be added to and become a part of the principal of said fund.

(4) The trustee shall have full power and authority to manage, handle, control, sell, invest, and reinvest said trust property in the manner in which the trustee shall deem wise and proper.

(5) After January 1, 1934, the income from said property and funds shall be paid to Robert P. Morsman during the remainder of his natural life.

(6) In the event Robert P. Morsman dies leaving issue, then said income shall be divided annually among such issue, children of a deceased child to take the share such deceased child would have taken had such child not died.

(7) In the event Robert P. Morsman dies leaving no issue surviving him, then upon his death said trust shall cease and terminate. Should Robert P. Morsman die leaving issue surviving, then said trust shall cease and terminate twenty years after his death.

(8) Upon the termination of said trust, the trust estate shall be divided between the issue of Robert P. Morsman, if there be any then living, children of a deceased child to take the same share such deceased child would have taken had such child not died. If, at the termination of said trust, there be no issue of said Robert P. Morsman then living, and said Robert P. Morsman. dies a married man, then said trust estate shall be turned over to the widow of said Robert P. Morsman, if there be one then living, and, if not, then said trust estate shall be distributed among the heirs of Robert P. Morsman, heirs to be ascertained according to the laws of the State of Nebraska."

When the foregoing instrument was signed, the certificates of stock mentioned therein were not assigned to petitioner as trustee, but were merely indorsed in blank, and were placed by him with the instrument itself in his safe deposit box. On February 1, 1929, he sold the 100 shares of A. T. & T. stock and, on February 5, 1929, he sold the 600 shares of International Utilities stock. On the dates of February 4, and 8, with the proceeds of these sales he purchased cashier's checks payable to himself as trustee. He kept no separate bank account for the trust fund. On February 8, 1929, petitioner added to the trust fund the sum of $3,371.78 by his personal check payable to himself as trustee; and simultaneously, as trustee, with the greater part of the proceeds bought certain mortgages from himself as an individual. The balance was later used in purchasing a mortgage from the United States Trust Company for the trust. On March 30, 1929, the petitioner handed over to himself, as trustee, another 100 shares of A. T. & T. stock, indorsing the stock certificate in blank as before. This stock was sold on May 1, 1929, and on that date he used the greater part of the proceeds of the sale in buying certain mortgages from himself and certain bonds from the United States Trust Company for the trust fund.

On May 3, 1929, the petitioner, in accordance with the provisions of the trust agreement, assigned and delivered to the United States Trust Company all the funds then included in the trust, amounting at that time, on account of the various transactions of petitioner while he handled the fund, to $59,337. The company accepted and receipted for the property on the same day.

The petitioner did not report the profit realized from the sale of the securities in his individual income tax for the year 1929. These profits were reported in a separate return filed by the United States Trust Company, as trustee. The Commissioner has determined that the profit realized from the sale of the securities in 1929 was taxable as income to the petitioner individually. The Board of Tax Appeals sustained the ruling of the Commissioner on the ground that the trustee and the cestui que trust under the so-called trust agreement were one and the same person prior to May 3, 1929, and that consequently the instrument did not of itself result in the creation of a legal trust before that date. The petitioner asks for a review of this adverse ruling.

■■ At the outset the intent of the petitioner in the execution of the trust agreement is disclosed both in his testimony before the Board of Tax Appeals and in the argument of his counsel in this court. He testified "that his income return for the year 1929 showed a net income of $68,-000.00; that at the time said trust agreement was executed he had in mind the idea of selling the A. T. & T. stock and the International Utilities Preferred B stock; that at the time he knew such a sale represented a considerable profit; that prior to the execution of such instrument, he discussed with his brother the question of the taxability of such profits to himself or to

the trust, if a trust were executed." And his counsel in his brief frankly admits "that one of the inducements to the execution of the trust deed was the fact that the profit from the sale of these securities could be taxed to a trustee instead of being income to petitioner." It is insisted, however, that "there is nothing wrong in petitioner's action." The question, of course, is not one of right or wrong. The question is whether or not the petitioner has properly manifested an intention to establish a fiduciary relationship in which there were imposed upon him as trustee some enforceable duty with respect to the securities sold by him prior to May 3, 1929. Trusts, Restatement, §§ 2 and 23. It is true that a legal transaction will not be denied its intended effect though an underlying motive may have been the evasion of taxes. Gregory v. Helvering, 293 U.S. 465, 469, 55 S.Ct. 266, 267, 79 L.Ed. 596, 97 A.L.R. 1355; Helvering v. St. Louis Trust Co., 296 U.S. 39, 56 S.Ct. 74, 80 L.Ed. 29, 100 A.L.R. 1239; Becker v. St. Louis Union Trust Co., 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. 35. But the transaction may always be scrutinized to see whether it is in reality what it appears to be. Gregory v. Helvering, supra; Johnson v. Commissioner (C.C.A.2) 86 F.(2d) 710, 712. Substance and not form should control in the application of tax laws. United States v. Phellis, 257 U.S. 156, 42 S.Ct. 63, 66 L.Ed. 180; Lonsdale v. Commissioner (C.C.A.8) 32 F.(2d) 537, 539. When a taxpayer thus boldly proclaims that his intent, at least in part, in attempting to create a trust is to evade taxes, the court should examine the forms used by him for the accomplishment of his purpose with particular care; and, if his ingenuity fails at any point, the court should not lend him its aid by resolving doubts in his favor.

The gist of the trust agreement in this case may be summarized as follows: The petitioner gratuitously declared (1) that he would hold the stocks enumerated, then owned by him, in trust with power to add thereto, "control, sell, invest and reinvest" the same (a) for his own benefit during life, and (b) at his death for his widow, issue, or heirs; and (2) that the United States Trust Company should be successor trustee, and that he would turn the corpus of the trust over to the trust company not later than January 1, 1939.

The question for consideration is whether or not the arrangement so devised resulted in the creation of an express trust covering the period and the transactions between January 28 and May 3, 1929. No claim is made that a charitable trust is involved. The petitioner contends that a private express trust did exist during the period in question and that the profits realized from the sale of the securities should be taxed as income to the trust and not as income to himself individually. To support petitioner's contention, his counsel rely solely upon the decision of the Supreme Court in Becker v. St. Louis Union Trust Co., 296 U.S. 48, 56 S.Ct. 78, 79, 80 L.Ed. 35. He directs our attention specifically to the following statement in the opinion of the court to sustain his position:

"By the declaration of trust here under review, the legal title, possession, and control of the trust estate passed irrevocably from the grantor as an individual to himself as trustee. The effect is no different than if the trustee had been another person."

It is urged that the trust agreement effected the same result in the instant case, and that possession and control of the securities likewise passed irrevocably from Morsman as an individual to himself as trustee on January 28, 1929; that is, that there was at that time a severance of the equitable and legal title of the property resulting in a trust. This raises the fundamental question involved.

The Becker Case is distinguishable on the facts from the present case, and is not in point. In the cited case the decedent seven years prior to his death by a declaration of trust set aside a fund consisting of securities and provided that from the income and profits therefrom he, as trustee, was to pay a monthly allowance to designated existing beneficiaries. There was a further provision to the effect that if the beneficiary should die before the settlor, the trust estate should revert to the settlor absolutely; but, if the settlor should die first, the property should thereupon pass to the beneficiary absolutely. The contingency whereby the property might revert to him had not taken place when the declarant died. The effect of the decision of the court was that the clause in the declaration of trust providing for the reversion was a condition subsequent, and that such provision did not of itself stamp the transfer as one intended to take effect in possession or enjoyment after declarant's death within the meaning of section 302(c) of the Revenue Act of 1926 (44 Stat. 70). In the opinion the court cited Helvering v. St. Louis Union Trust.

Co., 296 U.S. 39, 56 S.Ct. 74, 80 L.Ed. 29, 100 A.L.R. 1239, which differed from the Becker Case only in that the property had been transferred to a third person as trustee. The court held in the foregoing quotation that such difference was immaterial.

■ It is true that a trust may exist where the owner declares that he holds property as trustee for another designated person or persons, even including himself. In re Brown's Will, 252 N.Y. 366, 169 N.E. 612, 614; Stuart v. Sargent, 283 Mass. 536, 186 N.E. 649, 651; Murray v. O'Hara (Mass.) 195 N.E. 909, 911; Trusts, Restatement, §§ 17, 18, 28, 100. And it matters not in such a case that the declarant does not part with the possession of the property or the instrument creating the trust, or that the beneficiary has no notice of the trust and has not accepted it. In re Brown's Will, supra; In re Richardson's Estate, 138 Iowa, 668, 100 N.W. 797; Trusts, Restatement, § 36. By a recognition of the existence of these rules, the court was able in the Becker Case to pass over the question raised by the petitioner in this case and consider the one actually decided. In that case an existing beneficiary was definitely designated and was a different person than the trustee from the beginning. By application of the above-stated rules, there occurred an immediate severance of the equitable and legal title to the trust fund. But the facts that gave rise to a trust in that case are here absent. The petitioner (declarant) in this instance was made sole beneficiary during life, with remainder over to nonexisting beneficiaries, as will be pointed out later. A rule that allows one to declare himself trustee of property for another existent person does not necessarily allow one to declare himself trustee for a nonexistent person. While ordinarily "the decisive distinctions are those of degree and not of kind," Welch v. Helvering, 290 U.S. 111, 114, 54 S.Ct. 8, 9, 78 L.Ed. 212, the difference between the instrument here in question and the one in the Becker Case is one of kind. Mere forms of instruments, of course, and the use of the words "trust" and "trustee" cannot be depended upon in determining whether or not a trust is in reality created. The transaction itself must be scrutinized. Elliott v. Gordon (C.C.A. 10) 70 F.(2d) 9, 11; Hayden Plan Co. v. Wood, 97 Cal.App. 1, 275 P. 248; Lossie v. Central Trust Co., 219 Ky. 1, 292 S.W. 338, 340.

■ Before the Board of Tax Appeals, Morsman in his petition for redetermination claimed that a trust was created January 28, 1929, before the securities were sold. This was denied by the Commissioner. The burden of proof was upon the taxpayer to show that the Commissioner's determination was invalid. Helvering v. Taylor, 293 U.S. 507, 515, 55 S.Ct. 287, 290, 79 L.Ed. 623; Lucas v. Kansas City Structural Steel Co., 281 U.S. 264, 271, 50 S.Ct. 263, 265, 74 L.Ed. 848. This involved the burden of showing that an express trust was created January 28, 1929. To carry the burden thus cast upon him, the petitioner was required to establish the existence of all the elements of a trust at that time, including a trustor, a trustee, a trust fund, and a beneficiary or beneficiaries capable of enforcing the trust. The trust agreement named as beneficiaries Morsman himself during life and after his death his widow, issue, or heirs. At the hearing before the Board, the petitioner assumed the burden and introduced in evidence the trust agreement executed by Morsman, who testified to the method of handling the securities prior to May 3, 1929. But no testimony is found in the record relating to the existence of a wife, issue, or heirs.

Any uncertainty, however, arising from the ambiguity of the record, if it has any present significance, is put at rest by the statement of counsel in open court on the argument, People of State of New York ex rel. Cohn v. Graves et al., 57 S.Ct. 466, 81 L.Ed. —— (decided March 1, 1937), Shapiro v. Wilgus, 287 U.S. 348, 354, 53 S.Ct. 142, 144, 77 L.Ed. 355, 85 A.L.R. 128, that at the time the trust agreement was executed Morsman was a bachelor without issue. This fact shows that the finding of the Board was not arbitrary in so far as such finding is predicated upon the nonexistence of any beneficiaries other than Morsman himself at the time of the execution of the trust agreement; and it will limit our consideration of the question of the severance of the legal and equitable titles to the position of Morsman as settlor, trustee, and beneficiary, and to the future possibility of a widow, issue, or heirs capable of enforcing the trust.

■■ First. With respect to the position of Morsman, it is settled that a trust cannot exist where the same person possesses both the legal and equitable titles to the trust fund at the same time. In such a case the

two titles are said to merge. Moran v. Cornell, 49 R.I. 308, 142 A. 605, 608; In re Havesgaard's Estate, 59 S.D. 26, 238 N.W. 130, 132; In re Gillespie's Estate, 273 Pa. 227, 116 A. 824, 825; Walton v. Wormington, 89 Colo. 355, 2 P.(2d) 1088, 1090; Weeks v. Frankel, 197 N.Y. 304, 90 N.E. 969, 971; Trusts, Restatement, §§ 99(5) and 115(5). This principle is not denied. The result, of course, is different where one person conveys property to another who agrees to. hold in trust for the grantor, as in the case of Doctor v. Hughes, 225 N.Y. 305, 122 N.E. 221. In such a case there is an immediate severance of the legal and equitable titles, and a trust arises at once. In the instant case that provision of the agreement by which the petitioner undertook to hold for himself, standing alone, therefore, contributes nothing toward the creation of a trust. The claim, however, is that this provision, coupled with the agreement to hold for the widow, issue, or heirs, effected an immediate severance of the titles and that a trust came into existence immediately upon the execution of the trust agreement. It is further claimed that some importance attaches to the fact that the trust agreement provides that the income was to be accumulated until January 1, 1934, but how a severance of legal and equitable interests results from that fact is not explained and is not apparent.

■ Second. With respect to the possibility of issue, it will be observed that in designating beneficiaries and providing for the enjoyment of the property the petitioner has looked to the future. In paragraph (6) of the instrument it is provided that, "In the event Robert P. Morsman dies leaving issue, then said income shall be divided annually among such issue. * * *" In other words, he has said that the beneficiaries are to be determined at the time of his death from a class now nonexistent. It is true that the fact that the enjoyment is to be postponed does not go to the validity of the trust where there is a proper manifestation of intent to convey an interest to a present beneficiary, Trusts, Restatement, § 26, Comment g; nor is it at times material that the express beneficiary himself be not in existence, provided he can be ascertained within the period of the rule against perpetuities, Trusts, Restatement, § 112. More specifically it has been held in several cases that a present trust may be created where the beneficiary of an express trust is an unborn child. Folk v. Hughes,

100 S.C. 220, 84 S.E. 713; Heyward-Williams Co. v. McCall, 140 Ga. 502, 79 S.E. 133; Carson v. Carson, 60 N.C. 575 (Winst. 24). The rationale of these cases, however, is not believed to rest on the theory that an unborn child can be the express cestui of an immediate trust. To so hold would violate fundamental principles of trusts which require a present conveyance of the beneficial interest, Eschen v. Steers (C.C.A.8) 10 F.(2d) 739, 741, and the existence of present enforceable duties, Doan v. Vestry of Parish of Ascension, 103 Md. 662, 64 A. 314, 7 L.R.A.(N.S.) 1119, 115 Am.St.Rep. 379, Danforth v. City of Oshkosh, 119 Wis. 262, 97 N.W. 258, 263; Trusts, Restatement, § 2, and it would permit the suspension of the beneficial ownership, a notion repugnant to the requirements of a trust. The rationale of such a case is that the instrument has the effect of creating an immediate resulting trust for the settlor (which will cease if the expected child is born) "with an express trust for the child springing up when and if such child ever materializes." Bogert, Trusts and Trustees, § 163. In such a case, where the trustee is a third person, if no child is born within the period of the rule against perpetuities, the legal and equitable interests both merge in the settlor at the end of the period; but, if the settlor is himself the trustee, the two interests are not severed by the purported declaration. The law of trusts upon this point seems clear. The immediate resulting trust in favor of the settlor is but a specific application of the general rule which recognizes the existence of the resulting trust in favor of the settlor in cases where the legal title is taken by one who is not intended to have the beneficial interest and the beneficial interest is not otherwise effectively disposed of. Blunt v. Taylor, 230 Mass. 303, 119 N.E. 954; Filkins v. Severn, 127 Iowa, 738, 104 N.W. 346. So if A, a bachelor, transfers property to B in trust to accumulate the rents and profits and to convey the same to A's eldest son on reaching its majority (Trusts, Restatement, § 112, Illustration 6), a trust will arise at once—B now holding as a resulting trustee for A with the express trust arising if and when the eldest son comes into existence—the resulting trust then to cease. But in that view if A, a bachelor, or any person without issue, declares himself trustee of property for his own eldest son on identical or similar terms, no trust will presently arise. The express trust for the child cannot arise until the child comes into existence, and A cannot

hold as a resulting trustee for himself during his lifetime because of the necessary merger in such a case of the legal and equitable interests in the same person. If A should die without issue under these circumstances, the property constituting the so-called trust fund is as much a part of his estate as if he had never made the purported declaration. The distinction thus noted between the case where A declares himself trustee for his unborn issue and where he conveys to B to hold in trust for such issue is vital; and this is the point at which Morsman failed in his attempt to create a present trust. Where the beneficiary is in being, the beneficial interest may be vested in him though its enjoyment be postponed. But by "no distortion of language or legal principles" [Eschen v. Steers (C.C.A.) 10 F. (2d) 739, 744] can a present severance of legal and equitable titles, an essential element of any completed trust [Dillenbeck v. Pinnell, 121 Iowa, 201, 96 N.W. 860, at page 861; Frost v. Frost, 165 Mich. 591, 131 N.W. 60, 61], be spelled out where one makes a purported declaration of trust naming himself as trustee for unborn issue or other nonexistent persons. There are thus limitations to the oft-quoted rule that a present trust may arise although the express beneficiary is not in existence. The application of that rule to every case in which the purported beneficiary is unborn disregards "the perils that are latent in 'a jurisprudence of conceptions.'" Schubert v. August Schubert Wagon Co., 249 N.Y. 253, 164 N.E. 42, 64 A.L.R. 293. "Few formulas are meant to serve as universals." Id. The petitioner may, of course, subsequent to the execution of the trust agreement, have issue, but until such issue come into being, they cannot be said to have the status of existing beneficiaries. The possibility of issue does not of itself have the effect of presently severing the legal and equitable interests. It can operate in futuro at best. It is true that rules governing equitable interests are more flexible than those governing legal interests, but no reason exists for stretching the trust concept to a case where it has no plausible explanation.

It has been said that "If a beneficiary of a trust has not been born or conceived, a suit can be maintained on his behalf by a next friend or guardian to enforce the duties of the trustee." Trusts, Restatement, § 214, Comment a. The rule is illustrated by cases where other members of the class to which the unborn issue belong are already in existence, Trusts, Restatement, § 120, or where the owner has conveyed the property to a third person to hold for such issue, Trusts, Restatement, § 112, Comment d. These cases are instances in which there occurs for other reasons a present severance of the legal and equitable titles thus giving rise independently of any assumed rights of unborn issue to a trust and thereby giving to courts of equity, which traditionally exercise control over trusts, jurisdiction from the beginning; and having acquired jurisdiction the court retains it to protect rights which may later spring up, Trusts, Restatement, § 340, Comment d. In other words, the foregoing rule applies where, apart from the naming of the unborn issue, there is some rational explanation of a present trust. It is true that a guardian may be appointed for an unborn child which is in esse, Utah, Copper Co. v. Industrial Commission, 57 Utah 118, 193 P. 24, 13 A.L.R. 1367, but it is difficult to understand how such an appointment can be made for a child not yet conceived where there is no other basis of jurisdiction. It has been held that the existence of a ward is a necessary jurisdictional fact for the validity of an order appointing a guardian. In re Reeve's Guardianship, 176 Wis. 579, 186 N.W. 736, 742. To say that because a guardian may be appointed for an unborn child and that for that reason a present trust exists although the legal and equitable titles be merged in the same person is a plain case of putting the cart before the horse. It is only where there is a present severance of legal and equitable titles, which effect a trust, and which gives equity jurisdiction to act, that a court of equity can appoint a guardian to act in behalf of unborn issue. The creation of the trust is the cause, the power to appoint a guardian is the effect. It is elementary that neither a guardian, a guardian ad litem, nor a next friend can maintain a suit in court on behalf of persons not sui generis unless the court has jurisdiction of the subject-matter.

To hold that a *present* trust arises where the owner of property declares that he holds it in trust for himself and other persons who are as yet nonexistent not only lacks a logical explanation but is incapable of practical application. To a creditor seeking to subject the property to the satisfaction of a debt the petitioner would say that it was no longer his, but belonged, in equity, to others who were not yet in existence. But if he

sought to dissipate the property, there is no person in being who has such an interest that he may go into a court of equity and prevent the dissipation. To say that the petitioner in this case has an interest in enforcing such an obligation against himself or that the community at large is interested in preserving the rights not conceived as yet not conceived is, to say the least, an unwarranted assumption. For the court to regard possible unborn issue as present beneficiaries is to permit the substance and realities of the transaction to be obscured by words and phrases.

■■■ It appears in this case that the petitioner has no issue; therefore, no express trust has arisen on behalf of issue who might survive him. This result does not conflict with the rule that the members of a definite class may be the beneficiaries of a trust, Trusts, Restatement, § 120, Comments c and g, as the class was not in existence; nor with the rule that a trustee may be one of several beneficiaries, Woodward v. James, 115 N.Y. 346, 22 N.E. 150, 152; Woodbery v. Atlas Realty Co., 148 Ga. 712, 98 S.E. 472, 473, Trusts, Restatement, §§ 99(2) and 115(3), for the petitioner here was the only present beneficiary.

■■■ Third. With respect to the "heirs" as present beneficiaries and to the possible suggestion that petitioner's brother now living may take a present equitable interest under paragraph (8) of the trust agreement, it is observed that one of the elementary rules of law is that "A living person has no heirs." Duffield v. Duffield, 268 Ill. 29, 108 N.E. 673, 675, Ann.Cas.1916D, 859; Moffitt v. Williams, 116 Neb. 785, 219 N.W. 138; Avon State Bank v. Commercial & Savings Bank, 49 S.D. 575, 207 N.W. 654, 656, 44 A.L.R. 1462. For that reason, a son predeceasing his father never becomes his father's heir. Root v. Arnold, 133 Or. 417, 290 P. 1095. Only on death do heirs come into existence, "for the ancestor during his life beareth in his body (in judgment of law) all his heires, and therefore, it is truly said that haeres est pars antecessoris." Co. Litt. 22 b. Quoted in Doctor v. Hughes, 225 N.Y. 305, 122 N.E. 221, 222. What has been said with reference to the rights of unborn children applies with equal force to the rights of heirs, two classes equally nonexistent. "Heirs," therefore, have no present beneficial interest, and cannot be considered beneficiaries.

Under paragraph (8) the interest of the heirs, when they come into existence, is contingent upon failure of a widow and issue. But until they come into existence through the death of petitioner, they can have no interest either vested or contingent. Reference to the brother and other living relatives as potential heirs adds nothing to their rights under the trust agreement. That instrument recognizes only "heirs," and, as shown above, there are none in existence.

■■■ Furthermore, paragraph (8) of the instrument provides that "*at the termination of said trust * * * the estate shall be distributed among the heirs of Robert P. Morsman, heirs to be ascertained according to the laws of the State of Nebraska.*" (Italics supplied.) A conveyance to a trustee for the benefit of the grantor for life, and thereafter to the grantor's heirs gives the heirs no interest. Doctor v. Hughes, supra; Burton v. Boren, 308 Ill. 440, 139 N.E. 868; Stephens v. Moore, 298 Mo. 215, 249 S.W. 601. The rights, obviously, are no greater where the grantor holds for himself for life with the provision that it is to go to his heirs at his death. In the Doctor Case the grantor provided that upon his death the trustee was to "convey the said premises (if not sold) to the heirs at law of the party of the first part." The rule applied by the court was one of common law which did not allow a person "by limitation of uses, or devise, (to) make his right heir a purchaser." Pilus v. Milford, 1674, 1 Vent. 372. Judge Cardozo in the Doctor Case pointed out that while the rule as it survives to-day might be one of construction rather than property, still "Nothing in the surrounding circumstances suggests a purpose to vary the course of descent or distribution as it would be regulated by law. If that is so, the courts are not to be controlled by mere inaccuracies of expression." The provision there used is similar to the one used here by the petitioner, and there seems no escape from the result reached in that case. As already indicated, the basis for the severance of the legal and equitable interests in the Doctor Case during the period prior to the trustor's death was the fact that the property had been transferred to a third party to be held for the trustor during his life. Absent the transfer to a third person, present in the Doctor Case, the instrument here effects no severance until issue come into being. The instant case, like the Doctor Case, supra, is distinguished from the case of Schoellkopf v. Marine Trust Co., 267 N.Y. 358, 196 N.E.

288, cited in the dissenting opinion, upon well-settled principles of law. In the Schoellkopf Case the instrument provided that distribution might be made in a manner different from that provided in the law of descent; so that the "heirs" might take by purchase under the instrument and not by succession from the settlor. For that reason, they were considered an existing class the enjoyment of whose contingent interest was postponed. But assuming arguendo that the petitioner has manifested an intent to break the course of descent, the provision amounts to no more than an attempt to make a gift of the property to take effect at the time of the petitioner's death, provided he left no widow or issue surviving. "Such a gift is of necessity of a testamentary character." Boal v. Metropolitan Museum of Art (C.C.A.2) 19 F.(2d) 454. 458. Any person claiming an interest under such provision would therefore be, at best, a legatee under a testamentary provision invalid for want of compliance with statutory requirements. The brother on January 28, 1929, no doubt had an expectancy in the petitioner's property the same as any blood relative within the purview of the statutes of descent and distribution; but the trust agreement did not have the effect of changing that expectancy into a present beneficial interest entitling him to enforce any right against petitioner's estate during petitioner's lifetime.

■ Finally, with respect to the status of a widow as a beneficiary, what has been said in reference to the nonexistence of issue and heirs is applicable here. The record, as pointed out above, does not show the existence of a wife. A widow is, therefore, a mere potentiality without existence and with no one to represent her. As a fiction, she belongs to no class. In case of an hypothetical breach of duty of the trustee, no woman in all the world, upon the record here, has a present right to come forward and enforce any rights under the trust agreement, and no existing person is authorized to enforce her imaginary rights.

■ We now turn to the consideration of the effect of paragraph (1) of the trust agreement, which provides that on or prior to January 1, 1939, Robert P. Morsman will turn over the trust fund to the United States Trust Company as his successor in trust. The intention of petitioner, so expressed, that the trust company shall hold the property for his benefit during life and after his death for his widow, issue, or heirs does not affect the situation existing before May 3, 1929, for prior to that date the intention was not carried out by a conveyance of the legal title to the trust company. If A makes a gratuitous promise to convey property to B in trust for A and after A's death for A's issue, no trust arises until legal title is actually conveyed to B. If the donee never gets title, he cannot hold for another. Farmers' Loan & Trust Co. v. Winthrop, 238 N.Y. 477, 144 N.E. 686, 688; Brannock v. Magoon, 141 Mo.App. 316, 125 S.W. 535, 536; Barnum v. Reed, 136 Ill. 388, 26 N.E. 572, 574; Warsco v. Oshkosh Savings & Trust Co., 183 Wis. 156, 196 N.W. 829; Cornick v. Weir, 212 Iowa, 715, 237 N.W. 245, 248. In McCartney v. Ridgway, 160 Ill. 129, 43 N.E. 826, 835, 32 L.R.A. 555, the rule supported by many authorities is stated as follows:

"Where the [trust] instrument contemplates that there shall be a transfer of the property to a trustee, the relation of trustee and cestui que trust does not arise until such transfer is made."

Trusts, Restatement, § 26, Comment a, states the rule thus,

"If a person declares his intention or promises that he will at a subsequent time transfer property then owned or thereafter to be acquired by him to another person in trust no trust arises unless and until he makes the transfer in trust."

■ Further, the declaration of an intent, unsupported by consideration, to hold and preserve one's own property for the eventual enjoyment of another is no more than a declaration of a purpose to make a gift, and in this case it is ineffective as such for lack of delivery. Farmers' Loan & Trust Co. v. Winthrop, supra. The intent that the property was to be turned over to the trustee does not, therefore, amount to a declaration of trust because that intent had not been carried out at the time of the transactions under consideration. "A declaration [of trust] implies an announcement of an act performed, not a mere intention." In re Brown's Will, supra. To the same effect see Trusts, Restatement, § 23.

■ The trust agreement, therefore, failed to effect the creation of a trust on January 28, 1929. This results from the fact that no existing beneficiaries were named therein and, consequently, there was no present severance of the legal and equitable titles to the property. The question here determined is whether there was a valid

declaration of trust operating in praesenti between January 28 and May 3, 1929. That question must necessarily be answered in the negative since there was at that time no person in being who could claim any beneficial interest in the property other than the holder of the legal title. It is true, of course, that in equity a trust may not fail for want of a trustee, nevertheless the courts cannot supply a private express beneficiary.

The question of revocability, as argued by the petitioner, and, as decided by the Supreme Court in the Becker Case, in holding that "the legal title, possession, and control of the trust estate passed *irrevocably* from the grantor as an individual to himself as trustee" (italics supplied), is thus foreign to the case at bar. If there is no trust, there is no occasion to discuss revocability, the question actually before the court in the Becker Case. It may be observed in passing that there is room for argument that the trust created by the conveyance of May 3, 1929, was revocable, Burton v. Boren, 308 Ill. 440, 139 N.E. 868; Stephens v. Moore, 298 Mo. 215, 249 S.W. 601, so as to fall within the purview of section 166 of the Revenue Act of 1928, 26 U.S.C.A. § 166 note, which provides that income from a revocable trust shall be taxable to the grantor. But that question need not be settled here. It is enough that no trust was created at all prior to May 3, 1929.

Affirmed.

GARDNER, Circuit Judge (dissenting).

I am unable to concur in the opinion in this case. It will not, I think, be necessary to restate the facts, but it may be helpful to revert to the issues presented to the Board of Tax Appeals and the facts upon which they were decided because the case is here for review and we must limit our consideration to the record before the Board of Tax Appeals. Kendrick Coal & Dock Co. v. Commissioner (C.C.A.8) 29 F. (2d) 559; Helvering v. Montana Life Ins. Co. (C.C.A.9) 84 F.(2d) 623; Whitney v. Commissioner (C.C.A.3) 73 F.(2d) 589; Griffiths v. Commissioner (C.C.A.7) 50 F. (2d) 782; Heinz v. Commissioner (C.C.A. 5) 70 F.(2d) 461. Not only is this court required to consider only facts disclosed by the record made before the Board, but it should not discuss nor pass upon issues not there raised. Helvering v. Salvage, 297 U. S. 106, 56 S.Ct. 375, 80 L.Ed. 511; General

Utilities & Operating Co. v. Helvering, 296 U.S. 200, 56 S.Ct. 185, 187, 80 L.Ed. 154; Sunset Scavenger Co. v. Commissioner (C. C.A.9) 84 F.(2d) 453; Kottemann v. Commissioner (C.C.A.9) 81 F.(2d) 621; Botchford v. Commissioner (C.C.A.9) 81 F.(2d) 914.

In General Utilities & Operating Co. v. Helvering, supra, the Supreme Court reversed the Circuit Court of Appeals because that court had decided the case upon a ground not presented to nor ruled upon by the Board. In the course of the opinion it is said:

"Always a taxpayer is entitled to know with fair certainty the basis of the claim against him. Stipulations concerning facts and any other evidence properly are accommodated to issues adequately raised."

This court has frequently held that it will review on appeal only such questions as have been presented to the trial court and preserved in the record; that it is without power to alter or amend a bill of exceptions; that the printed transcript on appeal cannot be amended even on stipulation of the parties; and there is no power, either in this court nor in the trial court, to change the record as made in the lower court. Falvey v. Coats (C.C.A.8) 47 F.(2d) 856, 89 A.L.R. 1; Hayden v. Ogden Savings Bank (C.C.A.8) 158 F. 90; Johnson v. Titanium Pigment Co. (C.C.A.8) 81 F.(2d) 529; Case v. Hall (C.C.A.8) 94 F. 300; Board of Commissioners of Grand County v. King (C.C.A.8) 67 F. 945; Chickasaw Wood Products Co. v. Paysinger (C.C.A.8) 84 F.(2d) 476.

The issues presented to the Board of Tax Appeals were very simple. The petitioner set out in his petition the trust agreement and asserted that the Commissioner had erred in disregarding it and determining a deficiency. The petitioner alleged the execution of the trust instrument and the acts done by him pursuant thereto. The answer of the Commissioner admitted certain of the allegations of the petition, denied the other allegations, but pleaded no affirmative defense and made no claim of fraud or bad faith in the matter of the execution of the trust agreement or the acts done thereunder.

The majority opinion without finding or evidence brings into this record the alleged fact that the petitioner was a bachelor without issue, and the entire opinion is colored by these facts extraneous to the record.

The Board of Tax Appeals, in its opinion, states that it was the contention of respondent that "until the trust property was delivered and turned over to the United States Trust Co. as successor in trust under the provisions of paragraph 1 of the trust instrument, which occurred on May 3, 1929, the petitioner had complete control and power of revocation, and that the income from the said trust property is properly taxable to him." This was the issue before the Board of Tax Appeals. In discussing it, the Board said inter alia:

"During the period from January 28, 1929 to May 3, 1929, the petitioner was in physical possession of the trust instrument. He was in physical possession of the property composing the trust. He was the only beneficiary to the trust. There were no other interested parties. Clearly, this gave him absolute control to reinvest in himself title to the corpus of the trust or to destroy the trust at will."

Not only was this the issue before the Board of Tax Appeals, but it is the issue discussed by counsel for the respective parties in this court. On the various issues considered and discussed in the majority opinion, the petitioner has never had his day in court, and of the great wealth of authorities cited and discussed in the majority opinion but two cases were cited in the brief of either of the parties. The opinion will, I think, take both parties by surprise, and I think it violates the salutary rule that a taxpayer is entitled to know the basis of the claim against it because, among other things, "Stipulations concerning facts and any other evidence properly are accommodated to issues adequately raised." General Utilities & Operating Co. v. Helvering, 296 U.S. 200, 56 S.Ct. 185, 187, 80 L. Ed. 154.

If the views expressed in the majority opinion be accepted as sound, then the cause should be remanded so as to give the parties an opportunity of producing evidence with reference to such issues and of being heard thereon.

I am of the view that under the law as announced by the Supreme Court in Becker v. St. Louis Union Trust Co., 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. 35, and other authorities, a completed trust was created when petitioner signed the instrument set out in the opinion. In the case of personal property, an unequivocal declaration of trust by the settlor impresses the property with a trust character and converts his re-

lation to the property from that of the holder of the legal title to that of a trustee holding the legal title for such person or persons for whose benefit the trust is created. An owner of personal property may impress it with a present trust either by a declaration that he holds the property in trust, or by a transfer of the legal title to a third party under certain specified trusts. He may constitute either himself or some one else trustee, and if he makes himself trustee, no transfer of the subject-matter is necessary. Robb v. Washington & Jefferson College, 185 N.Y. 485, 78 N.E. 359; Dickerson's Appeal, 115 Pa. 198, 8 A. 64, 2 Am.St.Rep. 547; In re Brown's Will, 252 N.Y. 366, 169 N.E. 612; Stoehr v. Miller (C.C.A.2) 296 F. 414. Indeed, if the owner and possessor of property, intending to make disposition thereof for another, unequivocally declares himself trustee thereof for such other person, the latter becomes vested with the equitable estate even though he is not informed of the declaration and the trustor does not part with the possession of the property or deliver the writing, if there be one, declaring the trust. Becker v. St. Louis Union Trust Co., 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. 35; In re Smith's Estate, 144 Pa. 428, 22 A. 916, 27 Am.St. Rep. 641; Falk v. Janes, 50 N.J.Eq. 468, 26 A. 138, 35 Am.St.Rep. 783; Connecticut River Savings Bank v. Albee's Estate, 64 Vt. 571, 25 A. 487, 33 Am.St.Rep. 944; Gerrish v. New Bedford Institution, 128 Mass. 159, 35 Am.Rep. 365; Portland Cremation Ass'n v. Commissioner (C.C.A.9) 31 F.(2d) 843; Sieling v. Sieling, 151 Md. 536, 135 A. 376; Eschen v. Steers (C.C.A.8) 10 F.(2d) 739, 740; Restatement Law of Trusts, §§ 17, 36, 99, 100.

In Eschen v. Steers, supra, we held that where a person, orally or in writing, explicitly or impliedly declares that he holds personal property in praesenti for another, he thereby constitutes himself an express trustee. The majority opinion seeks to avoid the effect of this rule on the theory that the trust must fail because at the time of its creation there was no existing beneficiary, and hence it is said there was no severance of the equitable and legal title. It assumes that there were no living persons who were cestui que aside from the settlor, and hence that there could be no trust until a remainderman came into being. But the question before us is not what may happen to the title in the period between the creation of the trust and the

**30**

coming into being of a cestui que unborn at the time. The question to be determined is whether there is a valid present declaration of trust. Authority is not wanting to the effect that a trust may be created even though the cestui que trust at the time of its creation is not in existence. For instance, the case of Folk v. Hughes, 100 S.C. 220, 84 S.E. 713, 714, cited in the majority opinion, specifically so holds. In that case, J. W. Hughes conveyed land to his son G. W. Hughes by deed which contained a trust provision in favor of the son named as grantee, "and for the maintenance and support of the children of the said G. W. Hughes during the term of his natural life." Thereafter, G. W. Hughes, the trustee, conveyed the land back to his father by general warranty deed which included a warranty against "the claims of myself and my heirs and assigns and all and every person whomsoever," etc. The original trustor then reconveyed the property to his son G. W. Hughes by warranty deed. G. W. Hughes then mortgaged the property. At the date of the first deed to him (1890), containing the trust provision, G. W. Hughes was married but had no children, and he was still childless in 1892, the date of his reconveyance to his father, two years subsequent to the creation of the trust, so that at the time of the creation of the trust, outside of G. W. Hughes, there was no cestui que trust in being or conceived. Later, children were born through a second marriage of G. W. Hughes. The mortgage was foreclosed. In the course of the opinion it is said:

"* * * the deed of 1890 must be construed as conveying to G. W. Hughes the land therein described for life, for his own uses and in trust for the maintenance and support of his after-born children, with remainder in fee to his after-born children, if any, as purchasers. [Citing cases.] Of course, if no children had been born to G. W. Hughes, the fee would have reverted, by operation of law to J. W. Hughes. The remainder to the children of G. W. Hughes was contingent. Thereupon the question arises whether his reconveyance to J. W. Hughes, in 1892, before the birth of a child destroyed the precedent life estate in him, which was necessary to support such a remainder, and reverted the entire estate in J. W. Hughes * * * so as to destroy the intervening contingent remainder."

The court held that these after-conceived and after-born children were entitled to assert their rights under the trust even though they were not in being at the time of the creation of the trust. The court said:

"It is not necessary to the creation of a trust estate that the cestui que trust should be in existence at the time of its creation. 1 Perry on Trusts, § 66; Tiffany & Bullard on Trusts, 3; Carson v. Carson, 60 N.C. 575 (Winst. 24); Ashurst v. Given, 5 Watts & S.(Pa.) [323] 329. In the case last cited, a devise to a father in trust for his children at the time of his death was held to be good, although the father had no children at the time of the vesting of the estate in him as trustee."

But if it be assumed that there must have been in existence at the time of the creation of the trust a cestui que capable of taking, yet a prospective or potential heir, who under the terms of the trust may, under certain contingencies, be a beneficiary, fulfills this requirement. Salem Capital Flour Mills Co. v. Stayton Water-Ditch, & Canal Co. (C.C.) 33 F. 146, 153; Hunt v. Hunt, 124 Mich. 502, 83 N.W. 371, 373; Restatement Law of Trusts, p. 446; Roberts v. Michigan Trust Co., 273 Mich. 91, 262 N. W. 744, 748.

In Salem Capital Flour Mills Co. v. Stayton Water-Ditch & Canal Co., supra, the court said:

"But it is objected that the deed from Porter and wife is void for want of a cestui que trust at the date of its execution. * * * But if this were otherwise, and there was no cestui que trust or use in existence at the date of the deed, nor until the actual incorporation of the woolen company in the December following, the objection is not well taken. Mr. Washburn (2 Washb. Real Prop. 3d Ed. 173,) after a careful review of the authorities, says: 'It may be laid down as a general proposition that it is not necessary, in order to create a trust-estate, that a cestui que trust should be named who is in being.' And again (Id. 198) he says: 'A trust may be valid and effectual, where a trustee is named, although the cestui que trust may not then be in esse, provided such cestui que trust subsequently came into being.' See, also, on this point, Ashurst v. Given, 5 Watts & S.[(Pa.) 323] 328; Urket v. Coryell, 5 Watts & S.(Pa.) 60."

The trust agreement gives the corpus to heirs if the issue or the wife do not take. It is conceded that there is at least one prospective or potential heir, the settlor's

brother. It is, of course, true that no one can be heir of the living, yet there may be prospective heirs, and the word "heir" is used as designating a class. The trust for the heirs is contingent, and the interest of the beneficiary in the trust may be either vested or contingent. Restatement of Trusts, § 129. Where a trust is created, contingent remaindermen are entitled, before the event vesting the trust remainder in them, to compel the execution of the trust according to its terms. This principle is announced in Hunt v. Hunt, supra, where it is said:

"It is, of course, impossible to now determine who will be the heirs of Charles at his death. In the event of his dying without children, his brothers and sisters, and the children of any deceased brother or sister will be the beneficiaries under the will. They are therefore entitled to take proceedings to protect the trust fund, to compel the appointment of trustees, and to have them properly execute the trust. The fact that Charles has made a will is of no significance. If his will were irrevocable, he would have no interest in this suit other than the enforcement of the trust. The only interest he would then have would be the income from the estate. But he may revoke his will at any time, and die intestate. His will might also be held void. In these events, the other beneficiaries would be entitled to the property."

In Roberts v. Michigan Trust Co., supra, decided in October, 1935, the Supreme Court of Michigan reaffirmed the doctrine of Hunt v. Hunt. In the course of the opinion it is said:

"Plaintiffs are not interested in the income from the trust during their father's lifetime, but they may secure the preservation of the corpus in accordance with the terms of the trust. See Hunt v. Hunt, 124 Mich. 502, 507, 83 N.W. 371, 373, in which the interest of the plaintiffs was very similar to that in the instant case. The textatrix empowered the life beneficiaries to 'devise the property * * * but, should either fail to make a will, then it was to go to the heirs of each one.' In an attempt to terminate the trust, it was held that the prospective heirs of one of the life beneficiaries were entitled to take proceedings to protect the trust fund."

The opinion is an exhaustive and well-considered one and cites many authorities on this question. This would seem to be a complete answer to the theory announced by the Board of Tax Appeals that the petitioner "was the only beneficiary to the trust. There were no other interested parties. Clearly, this gave him absolute control to reinvest in himself title to the corpus of the trust, or to destroy the trust at will."

Here settlor's brother is a prospective heir, and the trust instrument at the date of its execution vested in him a contingent interest, and as said in Lewin on Trusts, page 874: "And generally a cestui que trust, who can allege an existing interest, however minute or remote may, upon reasonable cause shown, apply to the court to have his interest properly secured."

The majority opinion expresses the view that no present interest was created in the prospective heirs because, it is said, the beneficiaries are to be determined at the time of his death. As has already been observed, one has no heirs until death, yet he may have prospective heirs, and the word "heir," as used, designates a class. The instrument does not postpone the vesting of the interest until the happening of the contingency recited, but, on the other hand, it provides that at such time the property shall be "distributed," or "divided." These words imply a prior vesting of property, or otherwise there would be nothing either to distribute or divide. The trust instrument vested and preserved the property awaiting the happening of a contingency, and then ordered its distribution.

The case upon which great reliance is placed is Doctor v. Hughes, 225 N.Y. 305, 122 N.E. 221. In that case there was a conveyance to a trustee in trust to pay the rents and profits to the grantor for life, and upon his death the trustee was to "convey the said premises (if not sold) to the heirs at law of the [grantor]." In the instant case, I have pointed out that the instrument provides not for a conveyance, but simply for a division or a distribution of the property. That the case is not an authority sustaining the views expressed in the majority opinion is indicated by a much later opinion from the same court. Schoellkopf v. Marine Trust Company, 267 N.Y. 358, 196 N.E. 288, 290. In this later case, the trust instrument provided that the designated cestui que should have power to designate a person to whom the income and principal should go in the event of the death during the continuance of the trust. Then it was provided that if they should fail to make such designation, the income should be paid "to the heirs of the party of the

**32**

first part (the settlor) per stirpes, and not per capita, until the termination of this trust. In this connection, the word 'heirs' shall be construed to include those persons only who would be entitled to share in the distribution of personal estate under the laws of the State of New York at the time of such distribution." The settlor attempted to revoke the trust, though he reserved no such power in the trust instrument. The two sons consented to the revocation, but the trustees maintained that the infant grandchildren and the great grandchildren of the settlor, issue of those who had consented, were minors and could give no consent. The court so held, and in the course of the opinion it is said:

"Here those who are described as 'heirs' receive a contingent remainder created by the trust indenture. They take as purchasers through a beneficial right derived from the trust instrument, and all who have a share in that right and who may, by survival or other event, become members of the class entitled to the remainder, have a beneficial interest in the trust which cannot be destroyed without their consent. * * * Though here no grandchild of the settlor can in any contingency share in the income or corpus of the trust estate, unless before the termination of the trust his or her parent, who has already given written consent, dies, yet the grandchild, in case of the death of the parent before the date at which the class is determined, which is to receive a contingent gift from the settlor, will take as purchaser and not as heir or next of kin either of the settlor or any other ancestor. * * * The beneficial interest of these grandchildren in the trust is as certain as that of the settlor's children. None can enjoy any interest in the trust fund who does not survive both of the life tenants and both of the persons whose lives measure the duration of the trust. All who do survive till then will alike be members of the class then entitled to the remainder, unless such right has been defeated by execution of the power of appointment by one of the life tenants."

See, also, Mercantile Trust Co. v. Bergdorf & Goodman Co., 167 Md. 158, 173 A. 31, 93 A.L.R. 1205.

The majority opinion, I think, unduly stresses the alleged fact that the settlor was unmarried and without issue. If this were true, it cannot be assumed that the settlor will remain unmarried nor that he will remain without issue. Quigley's Trustee v.

Quigley, 161 Ky. 85, 170 S.W. 523; People v. Row, 135 Mich. 505, 98 N.W. 13; Taylor v. Crosson, 11 Del.Ch. 145, 98 A. 375; Rand v. Smith, 153 Ky. 516, 155 S.W. 1134; Shuford v. Brady, 169 N.C. 224, 85 S.E. 303.

There being no issue or claim of fraud, the petitioner should not be prejudiced by the fact that he may have had in mind diminishing the amount of his tax liability. So long as the method resorted to is legal, it is not material whether the result be obtained by investing in tax-exempt securities, or by the creation of a trust. Iowa Bridge Co. v. Commissioner of Internal Revenue (C.C.A.8) 39 F.(2d) 777; Jones v. Helvering, 63 App.D.C. 204, 71 F.(2d) 214; Bullen v. Wisconsin, 240 U.S. 625, 36 S.Ct. 473, 60 L.Ed. 830.

I am of the view that the decision of the Board of Tax Appeals should be reversed.