## LONSDALE v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, Eighth Circuit.
April 18, 1929.

Rehearing Denied May 28, 1929.

No. 8293.

Abraham Lowenhaupt, of St. Louis, Mo., for appellant.

John Vaughan Groner, Sp. Asst. Atty. Gen. (Mabel Walker Willebrandt, Asst. Atty. Gen., Sewall Key, Sp. Asst. Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and V. J. Heffernan, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for appellee.

Before VAN VALKENBURGH and COTTERAL, Circuit Judges, and SCOTT, District Judge.

VAN VALKENBURGH, Circuit Judge. This is a petition to review a decision of the United States Board of Tax Appeals. The Commissioner of Internal Revenue, on August 19, 1926, found that there was a deficiency in the amount of petitioner's income tax for the year 1924 in the sum of $3,766.91. This deficiency was held to arise from the exclusion of a 10 per cent. dividend declared by the National Bank of Commerce of St. Louis, Mo., which said dividend was applied to the purchase of stock in the Federal Commerce Trust Company of that city.

The petition of appellant, for appeal from this ruling to the United States Board of Tax Appeals, states that the National Bank of Commerce of St. Louis was advised "that as a national bank it could not engage in various financial endeavors advantageous for banks to undertake and in which state banks and trust companies may freely engage. It felt that the National Banking Act (12 USCA §§ 21–200) so restrained its endeavors that it was handicapped in competing with state banks and trust companies. For this reason said National Bank of Commerce in the year 1923 concluded that it would be advantageous to its business to organize a Missouri corporation to engage in the business in which it was restricted or handicapped by the National Banking Act and the rules and regulations thereunder. Thereupon said bank, through its president, under date of June 18, 1923, addressed a circular letter to its stockholders, advising them of its purpose and setting forth its plan for the organization of a new company." This circular letter reads as follows:

"National Bank of Commerce

"St. Louis, June 18, 1923.

"To the Stockholders of the National Bank of Commerce in St. Louis:

"As you know, we have established a savings department which now has nearly 50,000 depositors, with total deposits of over $8,000,000. We have also put in a bond department, which is doing a very satisfactory business. By special permission of the Federal Reserve Board, the bank qualified to act in a fiduciary capacity, and our trust department is now handling a large volume of trust matters. We have also taken over and are now operating our safe deposit vaults.

"There are, however, some financial matters that cannot be transacted through a national bank, and yet are allied with commercial banking so closely that we have realized for some time the necessity of having a way to take care of this business. And so, at a recent meeting of the board of directors, the officers of the bank were directed to formulate a plan for creating a company, to be called commerce company, or some other suitable

name, which will have the power of dealing in all kinds of securities, including first mortgage on real estate, real estate, and other matters of like character, it being the purpose that the charter of this company shall be broad enough to enable the company to supplement the service now performed by the bank.

"The new company is to be owned by the stockholders of the bank in proportion to their holdings of stock in the bank. We have examined a number of different plans that have been adopted by national banks throughout the country, and have concluded that the best is that known as the Chicago plan. Under this plan, the directors of this bank will declare a 10 per cent. cash dividend, amounting to $1,000,000, and the stockholders will be asked to subscribe for stock in the new company in an amount equal to this dividend and authorize the committee to apply the proceeds in payment of their stock in the new company. In this way, each subscribing shareholder in the bank will have one-tenth of a share of fully paid stock in the new company for each share of stock in the bank.

"Believing that the interests of the stockholders of this bank will best be served if their interests in the bank and the new company are kept identical, the plan of organization provides that the stock in the new company shall be held by the trustees named in the agreement for the benefit of the subscribers, except a few shares that may be necessary for the directors to qualify. While such trust continues, the beneficial interest in the stock of the new company deposited with the trustees will pass with the transfer of the stock in this bank.

"Each stockholder, therefore, is requested to sign the enclosed acceptance and power of attorney so that the new company may be promptly organized and put in operation. The gentlemen named in the power of attorney are directors and large stockholders in the bank.

"Yours very truly,
"[Signed]    John G. Lonsdale, President."

A form for acceptance and power of attorney, which the stockholders were requested to sign, was inclosed with this letter.

Prior to January 2, 1924, stockholders of the National Bank of Commerce owning in excess of 80 per cent. of the stock of the bank had signed the acceptance and power of attorney; of these the petitioner Lonsdale was one. January 22, 1924, the dividend of 10 per cent. was declared; the resolution to that effect reciting that this was done in order "that each stockholder so minded may,

with said dividend, cause the payment in full of his interest" in said new company. Under the terms of the letter to stockholders of June 18, 1923, the dividend thus declared was to be a cash dividend applying to all stockholders, and, while declared for the express purpose of being devoted, at the will of the stockholders, to payment of their subscription to the capital stock of the new company, it followed necessarily that those stockholders who refused to accept the proposition made, and to apply their dividend to the purchase of such stock, would, and must, receive the same in cash. The Commissioner of Internal Revenue ruled that the petitioner received a taxable dividend of $14,100 upon his stock in the bank in the transaction above recited.

█ The petitioner contends that, because of their agreement, the assenting stockholders of the National Bank of Commerce were not entitled to cash under the dividend resolution; that, by reason of the trust under which the stock of the Federal Commerce Trust Company was placed, appellant received nothing in the nature of income. Furthermore, that the transaction constituted a reorganization of the National Bank of Commerce under section 203 of the Revenue Act of 1924 (26 USCA § 934) which excludes the recognition of gain. Upon appeal to the Board of Tax Appeals the ruling of the commissioner was affirmed.

Section 203 of the Revenue Act of 1924, in so far as it has present application, reads as follows:

"(c) If there is distributed, in pursuance of a plan of reorganization, to a shareholder in a corporation a party to the reorganization, stock or securities in such corporation or in another corporation a party to the reorganization, without the surrender by such shareholder of stock or securities in such a corporation, no gain to the distributee from the receipt of such stock or securities shall be recognized.   *   *   *

"(h) As used in this section and sections 201 and 204—(1) the term 'reorganization' means   *   *   *   or (B) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred.   *   *   *

"(2) The term 'a party to a reorganization' includes a corporation resulting from a reorganization, and includes both corporations in the case of an acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total

number of shares of all other classes of stock of another corporation."

"What is or is not 'income' within the meaning of the amendment [Const. Amend. 16] must be determined in each case according to truth and substance, without regard to form. Income may be defined as the gain derived from capital, from labor, or from both combined, including profit gained through sale or conversion of capital." Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570. "Substance and not form should control in the application of the Sixteenth Amendment and the income tax laws enacted under it." United States v. Phellis, 257 U. S. 156, 42 S. Ct. 63, 66 L. Ed. 180.

Appellant received a distinct individual gain by the declaring of the dividend in question. The fact that he did not receive the cash in hand, but permitted the cash dividend thus declared to be used in the purchase of stock in another and distinct corporation, did not alter the substantial effect of the transaction; nor is it important that he could not presently sell and dispose of his stock in the new company, without at the same time selling his stock in the bank. Whenever such a disposition shall be made, there will be an increment of gain corresponding to the value of the new corporation stock which was purchased with the dividend declared. This dividend was segregated from the capital assets of the bank, and, when declared, was the property of the stockholder, and not of the bank. Any stockholder might, if so minded, have received his portion of the dividend in money, and have refused acceptance of the plan. The fact that appellant reinvested it in the stock of the new corporation, organized to do a distinct business which the bank was not authorized to do, renders that dividend no less an item of income. It is the inherent nature of the dividend itself that controls.

Referring now to the claim of reorganization whereby it is urged that the transaction falls within the terms of section 203 of the Revenue Act of 1924 above quoted, it will be observed that the procedure adopted does not conform to controlling features of the provisions of that act. This section obviously has reference either to a complete reorganization of the original corporation by a transfer of its entire assets to another, then existing or newly organized, or to a transfer of a part of the assets in such manner that the corporations may thereafter be under one control and may be operated substantially as one in the prosecution of their business. It cannot properly, and does not, we think,

refer to the organization of an independent company—although with substantially the same stockholders and officers—which is authorized by its charter to transact business and engage in dealings which are prohibited to the original corporation. It will be observed that both corporations operate independently along the lines prescribed in their charters and recognized by the laws of their existence.

Furthermore, the act in question presumes a transfer of assets by the corporation itself. It does not include the application of dividends which, when declared, are the property of the stockholders. If the new company be considered as a reorganization of the bank, or that the two companies, standing together, constitute such a reorganization, and such a unit of corporate existence, then the bank is thus indirectly empowered to do that which in the petition of appellant it is conceded to be without authority to do. No theory of reorganization which involves necessarily such a palpable evasion of law can be indulged. To accomplish thus indirectly what the bank was not permitted to do directly, it has adopted a plan which brings its stockholders clearly within the purview of the income tax law. This conclusion is sustained by the rule announced in Rockefeller v. United States, 257 U. S. 176, 42 S. Ct. 68, 66 L. Ed. 186, and Marr v. United States, 268 U. S. 536, 45 S. Ct. 575, 69 L. Ed. 1079.

The contention that section 203 of the act of 1924, as applied to the facts before us, reverses the doctrine announced in the cases cited, cannot be sustained. The further contention that the bank and the trust company are so identical in ownership and united in management that one is but the alter ego of the other is met by the language of the Supreme Court in Corsicana National Bank v. Johnson, 251 U. S. 68–88, 40 S. Ct. 82, 90 (64 L. Ed. 141), as follows:

"We cannot accede to either contention in the extreme. Because the bank and the loan company were distinct legal organizations, operating under separate charters, derived from different sources, and possessing independent powers and privileges, we are constrained to hold that, notwithstanding the identity of stock ownership and their close affiliation in management, for some purposes they must be regarded as separate corporations."

The cases of United States v. Mellon (C. C. A.) 281 F. 645, and United States v. Davison (C. C. A.) 9 F.(2d) 1022, have been examined, and found to have no application here. The National Bank of Commerce

540

continues as before—its capital stock and the nature of its business unimpaired and unchanged by this transaction.

It follows, in our opinion, that the judgment of the Board of Tax Appeals that the dividend in question constituted taxable income to the petitioner, and that there is a deficiency for the year 1924, in the amount of $3,766.91, should be affirmed; and it is so ordered.