**COUDON v. TAIT, Collector of Internal Revenue.**

No. 3895.

District Court, D. Maryland.

Feb. 4, 1932.

Frederick W. Brune (of Semmes, Bowen & Semmes), of Baltimore, Md., and W. A. Seifert (of Smith, Shaw, McClay & Seifert), of Pittsburgh, Pa., for plaintiff.

Simon E. Sobeloff, U. S. Atty., and Chas. G. Page, Asst. U. S. Atty., both of Baltimore, Md., for defendant.

CHESNUT, District Judge.

In this case, the plaintiff sues to recover the surtax on income received during the taxing years 1921, 1922, and 1923, from dividends on stock held by the plaintiff in the Wheeling Steel Corporation, of Delaware. The plaintiff's contention is that the dividends on which the alleged excessive tax was paid was not income, but a return of capital. The applicable Revenue Act is that of 1921 (42 Stat. 227).

The facts are entirely embraced within a written stipulation filed October 28, 1931. Both parties have moved for a directed verdict on these facts. Much abridged, the controlling facts may be stated as follows: As of August 1, 1920, three separate West Virginia corporations, all engaged in the manufacture and sale of steel and iron products, were merged into a newly formed Delaware corporation known as the Wheeling Steel Corporation. The merger took the form of the issuance of stock of the Delaware corporation in exchange for the stock of the West Virginia corporations, which acquired approximately 98 per cent. of all the outstanding stock of the latter. The West Virginia corporations continued their separate corporate organizations and business until May 1, 1923, when the physical properties were conveyed to the Delaware corporations, and the subsidiaries shortly thereafter dissolved.

The Delaware corporation issued its preferred and common stocks in exchange for the stocks of the subsidiaries, on a basis agreed upon by the stockholders, in the aggregate principal amount of $66,179,800. At that time the par value of the aggregate outstanding paid-up capital stock of the subsidiaries was $63,964,755; and the aggregate undistributed earned surplus of these three subsidiaries, accumulated from the operation of their respective businesses since March 1, 1913, was $21,459,085.56. During the period from August 1, 1920, to May 1, 1923, the three subsidiary corporations made payments of dividends to the Wheeling Steel Corporation in excess of their earnings dur-ing said period; this excess being paid from their separate surpluses accumulated after March 1, 1913, and existing at August 1, 1920; and the Delaware corporation in turn distributed the amount so received to its shareholders (including the plaintiff) as its dividends. The stipulation of facts does not contain any information as to the bookkeeping entries made by the Wheeling Steel Corporation at the time of the issuance of its stock or with relation to the receipt and distribution of the dividends. It appears that the merger of the corporations was actuated purely by ordinary business reasons without thought of income taxation on stockholders

The plaintiff's contention is that to the extent that the dividends received by the Delaware corporation from its subsidiaries during the period mentioned exceeded the earning of the subsidiaries during that period (the excess being paid from surplus accumulated since March 1, 1913), they constituted a return of capital to the Delaware corporation and were not income to it; and therefore, when in turn distributed by the Delaware corporation as dividends to its stockholders, the latter were to the extent mentioned receiving a return of their capital investment in the Delaware corporation, and not income therefrom. The argument on behalf of the plaintiff is that the Wheeling Steel Corporation, through its ownership of the stock of the subsidiaries, acquired all of the capital of the subsidiaries, including their accumulated surplus (with the exception of that represented by the small outstanding minority stock interest); and it is said that the effect of the transaction was, so far as the Delaware corporation is concerned, to capitalize the surplus of the subsidiaries so that any distribution of this surplus, flowing from the subsidiaries to the Delaware corporation and by it passed on to its own stockholders by way of dividends, was a distribution of a part of the capital of the Delaware corporation, and not income.

I am unable to accept this view of the matter for a number of reasons. In the first place, the argument confuses the ownership of stock and the ownership of physical assets. The Delaware corporation by owning the stock of the subsidiaries, did not thereby become the owner of their physical assets. The distinction is a well-known concept of corporate law. It has been recently well expressed by the Supreme Court in the case of Rhode Island Hospital Trust v. Doughton, 270 U. S. 69, 46 S. Ct. 256, 70 L. Ed. 475, 43 A. L. R. 1374.

■■ Likewise, the real capital of the Delaware corporation was not the physical assets of the subsidiaries, but their shares of capital stock. The Delaware corporation was a mere holding company, and dividends paid by the subsidiaries on their stock to the holding company were admittedly income payments from earnings so far as the subsidiaries were concerned. And if the stock of the subsidiaries had been held by an individual instead of a holding corporation, it is also admitted that the dividends would have been taxable in the ordinary way. It seems equally clear that dividend payments were income to the Delaware corporation. The stocks of the subsidiaries owned by the Delaware corporation constituted its capital and the dividends paid by the subsidiaries on their stocks constituted distributed income. Ordinarily, a purely holding corporation receives its own earnings and income from dividends on the stock held by it.

It may also be noted, although the consideration may not be controlling, that the Delaware corporation did not undertake in form to capitalize the aggregate surplus of the subsidiaries because, as above stated, the aggregate par value of stock issued by the Delaware corporation for a like aggregate par value of stock of the subsidiaries was $66,179,800, while the total par value of the stock of the subsidiaries was $63,964,755, and the aggregate accumulated surplus (since March 1, 1913) was, in addition thereto, $21,459,085.56. That is to say, the Delaware corporation did not in form undertake to capitalize the total value of the assets of the three subsidiaries by issuing its own shares of stock of a par value equal to the aggregate of the capital and surplus of the subsidiaries.

■ The argument as to capitalization of the surplus of the subsidiaries by the Delaware corporation submitted by plaintiff's counsel is based very largely on the statutory definition of the phrase "invested capital," in the Revenue Act relating to the excess profits tax. This definition seems to me to have no real bearing on the problem here involved, which does not arise under the excess profits tax law.

■ Furthermore, the exact question here is whether the plaintiff is liable for this tax; that is to say, Was the dividend received by him, *income to him?* As was said in United States v. Phellis, 257 U. S. 175, 42 S. Ct. 63, 67, 66 L. Ed. 180: "The liability of a stockholder to pay an individual income tax must be tested by the effect of the transaction upon the individual."

The Income Tax Act of 1921, § 213 (42 Stat. 237) provides: "That for the purposes of this title * * * the term 'gross income'—(a) Includes gains, profits, and income * * * from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever."

The term "dividend" is defined for the purposes of the act by section 201 (a) and (b) as follows:

"(a) That the term 'dividend' when used in this title * * * means any distribution made by a corporation to its shareholders or members, whether in cash or in other property, out of its earnings or profits accumulated since February 28, 1913, except * * *

"(b) For the purposes of this Act every distribution is made out of earnings or profits, and from the most recently accumulated earnings or profits, to the extent of such earnings or profits accumulated since February 28, 1913; but any earnings or profits accumulated or increase in value of property accrued prior to March 1, 1913, may be distributed exempt from the tax, after the earnings and profits accumulated since February 28, 1913, have been distributed."

■ The act makes it entirely clear that dividends from surplus built up from earnings after February 28, 1913, are taxable income. In this case there is no contention that any part of the dividends represented earnings prior to March 1, 1913. The burden of proof would seem to be very clearly upon the plaintiff to show that the ordinary form of dividend is not taxable, either because it is from earnings accumulated prior to March 1, 1913, or is not income at all but a return of capital. In my opinion the plaintiff has not met this burden under the facts stipulated.

■ The plaintiff's contention, to succeed, must go to the effect of showing that the dividends received by him to the extent of the amount in dispute were not paid out of earnings or profits within the meaning of these terms, as contained in the definition of dividends above quoted. For the reasons already stated, I am of the opinion that the dividends distributed by the Delaware corporation were from its earnings or profits, and it is not disputed that no part were from earnings or profits accumulated prior to February 28, 1913, whether the matter be considered from

the standpoint of the Delaware corporation or of its subsidiaries.

A somewhat elaborate argument has been offered by the plaintiff's counsel and answered by counsel for the defendant with regard to the true nature of capital and income respectively, both from the economic and legal aspects. I think it unnecessary to enter into a discussion of the matter from the economic aspect, because the subject is very clearly determined in the legal aspect by controlling decisions of the Supreme Court. In Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 193, 64 L. Ed. 521, 9 A. L. R. 1570 (the stock dividend case) legal distinctions between income and capital are clearly stated. It was there held that what is or is not income within the meaning of the Sixteenth Amendment must be determined in each case according to truth and substance without regard to form; that income may be defined as the gain derived from capital, from labor or effort, or both combined, including profit or gain through sale or conversion of capital. Income is not a gain accruing to capital or a growth in the value of the investment; "but a gain, a profit, something of exchangeable value, *proceeding from the property, severed from the capital,* however invested or employed, and *coming in,* being derived, that is *received or drawn,* by the recipient (the taxpayer) for his *separate* use, benefit and disposal; *that* is income derived from property."

See, also, United States v. Phellis, 257 U. S. 156, 42 S. Ct. 63, 66 L. Ed. 180; Taft v. Bowers, 278 U. S. 470, 49 S. Ct. 199, 73 L. Ed. 460, 64 A. L. R. 362.

The argument of plaintiff's counsel is that the dividends paid by the Delaware corporation diminished its capital. But this is really true in the case of every dividend distributed, as is well stated by the Supreme Court in Lynch v. Hornby, 247 U. S. 339, at page 346, 38 S. Ct. 543, 546, 62 L. Ed. 1149, where the court said: "We do not overlook the fact that every dividend distribution diminishes by just so much the assets of the corporation, and in a theoretical sense reduces the intrinsic value of the stock. But, at the same time, it demonstrates the capacity of the corporation to pay dividends, holds out a promise of further dividends in the future, and quite probably increases the market value of the shares. In our opinion, Congress laid hold of dividends paid in the ordinary course as de facto income of the stockholder, without regard to the ultimate effect upon the corporation resulting from their payment."

More extended reasoning to the same effect is contained in United States v. Phellis, supra. Compare Gulf Oil Corporation v. Lewellyn, 248 U. S. 71, 39 S. Ct. 35, 63 L. Ed. 133.

In form, the dividend in this case was that of the ordinary current dividend payable by a corporation to its stockholders. And when the transaction is analyzed closely, the substance does not vary from the form or take the case out of the ordinary run of dividends.

While taxing statutes are to be strictly construed and applied only to situations which fairly come within the words of the statute, the latter must be given their reasonable meaning and application. To sustain this tax, the situation here does not require a forced construction of the words of the taxing statute, but on the contrary, to defeat the tax, necessitates argument on behalf of the taxpayer contrary to the ordinary meaning of the words as applied to a customary transaction. The extreme nature of the taxpayer's contention is seen in the consideration that, if the argument is sound, practically all current dividends from earnings would escape taxation if the stockholders would from time to time form successive holding companies and capitalize earned surplus of subsidiaries in the way contended for in this case. To give such application to the taxing statute would, I think, be forcing an utterly unreasonable construction thereof which must have been contrary to the intention of Congress. At the best, plaintiff's contention is based upon a conception of the organization and capitalization of the Delaware corporation which converts it into a mere legal buffer against dividend taxation. As the Delaware corporation is a mere holding company and a convenient conduit for the transfer of dividends from the operating and earning companies to the ultimate owners (the stockholders of the Delaware corporation), it would be legally possible, if necessary, to disregard the corporate fiction of the holding company in order that the obvious purpose of Congress to tax income from dividends in the ordinary form should be accomplished. As was said by the Circuit Court of Appeals for the Ninth Circuit in the somewhat similar case of Osburn California Corporation v. Welch, 39 F.(2d) 41, 43: "The notion that a corporation is an entity separate and distinct from its stockholders is a fiction of law which the court will regard

for some purposes and disregard for others. For tax purposes, this fiction is often disregarded."

See, also, similar statement of the principle in McDonald v. Commissioner of Internal Revenue (4th C. C A.) decided October 12, 1931, reported in 52 F.(2d) 920.

Plaintiff's counsel refer to the decision of the Board of Tax Appeals, in the case of Robeson v. Commissioner of Internal Revenue, 18 B. T. A. 323, as an authority in support of their position. These two New York corporations consolidated in the technical sense by forming a new corporation which acquired all of the assets of the former corporations. The new corporation took over the physical properties of the former corporations. It was held that a dividend paid by the new corporation shortly after its formation in excess of its earnings since formation did not constitute taxable dividends to the extent of the excess, as the latter was to be regarded as a return of capital. The essential point on which the decision was based was that the corporate earnings comprehended by a definition of dividends in section 201 (a) of the Revenue Act of 1921, referred to the earnings of the particular corporation; that is to say, *its* earnings. It is stated by the assistant district attorney that the decision has not been acquiesced in by the Commissioner of Internal Revenue, and the question is still pending; and, further, it is contended that the decision is in effect inconsistent with the recent decision of the Circuit Court of Appeals of this circuit in the McDonald Case, above cited. But however that may be, the Robeson Case is clearly distinguishable from the present case. Indeed the whole of the plaintiff's claim as made in its declaration seeks to recover excess taxes paid for the years 1924 and 1925, as well as 1921–23; but the controversy for 1924 and 1925 has been disposed of by an agreement between the Commissioner and the taxpayer as to the proper amount of tax due for those years, the result having been arrived at in view of the changed legal conditions consequent upon the acquisition by the Delaware corporation of the physical assets of the subsidiaries and their dissolution.

It may be added that in this case the taxpayer, in his several returns for the years in question, included the whole of the dividends received by him and seemingly paid the tax thereon without question. It was not until several years later that the point herein discussed was made by way of petitions for refund which have been denied in due course.

That is to say, the taxpayer originally apparently treated the dividends received as in the ordinary form of current income. And in conclusion, I am of the opinion that they did constitute current income from earnings both in form and in substance. After a careful consideration of the facts stipulated, I see nothing in the case to make it substantially distinct from the ordinary dividend paid from earnings.

At the oral argument counsel for both parties agreed that the court's consideration of the stipulation of facts need not embrace any detailed examination of the numerous and lengthy exhibits attached thereto, consisting principally of formal proceedings affecting the four corporations. It was agreed that these were annexed to the stipulation merely for the purpose of supporting the facts stipulated, which are contained in the first thirteen typewritten pages of the whole document. For this reason I have not found it necessary to read the exhibits in extenso. I express my thanks to counsel on both sides for their full and excellent oral and written arguments.

I grant the request for a directed verdict for the defendant, which will accordingly be entered by the clerk.