## MOORE v. HOEY, Collector of Internal Revenue.

District Court, S. D. New York.
Jan. 16, 1940.

Bleakley, Platt & Walker, of New York City (Horace N. Taylor, Winthrop G. Brown, and Joseph C. Wilberding, Jr. all of New York City, of counsel), for plaintiffs.

John T. Cahill, of New York City (William L. Lynch, of New York City, of counsel), for defendant.

CONGER, District Judge.

Plaintiff seeks to recover allegedly overpaid income taxes for the year 1933, arising from the failure of the Commissioner of Internal Revenue, to allow as deductions, claimed losses due to worthlessness, in that year, of shares of stock of the Continental Corporation of New York (hereinafter referred to as the Corporation), and Sahoff Building Company, Inc.

A stipulation of facts (Plaintiff's Exhibit 1), together with certain exhibits, comprises the only evidence before the Court.

Plaintiff filed in proper time his individual income tax return for the year 1933. He paid the tax, and after an audit, paid a deficiency assessed against him with interest.

On or about March 2, 1936, plaintiff filed a claim for a refund alleging that the above shares of stock had become worthless during 1933; that at the time of making his 1933 income tax return he was unaware of the worthlessness of the said stock; that therefore he was claiming a reduction on his 1933 income tax which had been over-assessed by the amount of the claimed loss.

The claim was not acted upon by the Commissioner for Internal Revenue, and therefore this action has resulted.

### Sahoff Building Company, Inc.

There is little, if any, controversy over the contention of plaintiff in respect to this stock.

The Sahoff Building Company, Inc., was a New York Corporation which was in the realty business and owned certain lands in Montauk, Long Island, New York.

The plaintiff purchased the following shares of the capital stock of Sahoff Building Company, Inc., on the following dates for the following amounts: May, 1928—36 shares of preferred and 22 shares of common for $3,600; in May, 1929—7 shares of preferred and 7 shares of common for $700; in May, 1931—7 shares of

preferred and 7 shares of common for $700; in April, 1932—7 shares of preferred and 7 shares of common for $700 —making a total of 57 shares of preferred and 43 shares of common for $5,700.

On January 14, 1933, all of the property, both real and personal, of the corporation was put up at public auction and sold, subject to mortgages and unpaid taxes, for $250,000.

The proceeds of the sale were used to pay the expenses thereof and the entire balance applied on obligations of the corporation. After the sale the corporation had no remaining assets of any kind, and the stock therefore became and was worthless.

There is no factual dispute here; plaintiff is entitled to the refund; he is entitled to a reduction on his income tax return for 1933 for the proper amount based on a $5,700 loss of income, which he paid for the Sahoff Building Company, Inc., stock.

### Continental Corporation.

This issue presents the only real controversy in this action.

On or about July 14, 1929, Paul Moore, the plaintiff, purchased 7,700 shares of stock of the Continental Bank and Trust Company of New York (hereinafter referred to as the Bank). Down to and during the year 1933 he was still the owner and holder of the said shares of stock, which entitled him to proportional parts of all dividends and liquidation distributions of the Corporation, the shares of which were held by designated officers and directors of the Bank as Trustees. Later, and in 1931, as the result of a merger which resulted in a reduction of stock, the number of shares of the Corporation in which plaintiff had a beneficial interest was reduced to 4,851 shares.

The corporation was organized in 1929 pursuant to an investment policy which the bank, on account of its limited powers, could not itself do, but which was regarded as desirable by its directors.

The Corporation was dissolved in September, 1933, having no assets to distribute in liquidation.

Briefly the set up of the Bank and the Corporation was as follows:

In June, 1929, the capital stock of the Bank was 200,000 shares, with par value of $10 per share: the capital stock of the Corporation was 200,000 shares, with par value of $5 per share.

On July 1, 1929, the Bank declared a stock dividend of 50 per cent, increasing its capital to 300,000 shares of a par value of $10 a share.

On July 1, 1929, the Bank authorized a capital stock increase of 300,000 additional shares, and the corporation authorized a capital stock increase of 400,000 shares, so that each had a capital stock of 600,000 shares.

These additional shares of stock were to be sold and put out pursuant to an agreement known as the Smith and Gallatin Syndicate Agreement (Exhibit B).

All of these additional shares of stock were sold pursuant to and under the terms of the Trust Agreement (Exhibit A), under and by which the Corporation stock was to be held by the voting trustees for the pro rata benefit of the persons, from time to time, constituted the stockholders of record of the Bank.

Plaintiff, on or about July 14, 1929, purchased 7,700 shares of the Bank stock at $45 per share. Plaintiff's purchase was under the terms of the Smith and Gallatin agreement (Exhibit B) and the stock was sold, of course, subject to the Trust Agreement (Exhibit A).

Under the Smith and Gallatin agreement the Bank stock was sold at $45 per share, of which $6.66⅔ was to be deemed in payment of 1⅓ shares of the corporation stock, which was to be paid by the Bank to the Corporation as capital.

As the result of the dissolution in 1933 of the Corporation without assets, the plaintiff claims as a stockholder of the Corporation, he is entitled to take a loss for the year 1933 of $6.66⅔ per share for each share of the Corporation stock in which he had a beneficial interest, which he contends as the cost basis of the corporation stock, in all, $51,333.33. And further, that by reason of the merger of the Bank, the Strauss National Bank and Trust Company, and the International Trust Co., certain transactions were had between the parties and the Corporation that as a result, as he claims, each of the 352,000 shares of the Corporation stock contributed $5.87 plus per share, and that by owning 4,851 shares of the Corporation stock he contributed thereby $28,496.47, which he claims constituted an additional cost basis of the Corporation stock.

The sole inquiry here, it seems to me, is whether or not the Bank and Corporation were in fact one entity, inseparable, and so intrinsically entwined as would necessarily and practically make them one unit. If that is so, the plaintiff's loss cannot be allocated to one or the other inseparable companies, the Bank or the Corporation, but such loss must be ascertained and deducted when and only when the stock in the entire unit is sold or otherwise disposed of.

The plaintiff's claim for refund must be denied. Pursuant to the terms of agreement (Exhibit A), each share of bank stock (including plaintiff's) was stamped with the following:

"Under the terms of a certain agreement dated May 1, 1929, between Frederick H. Horby, Andre de Coppet and Julian A. Acosta, as Trustees, parties of the first part, and Frost Haviland, and other stockholders of the Continental Bank of New York (hereinafter referred to as the "Bank"), parties of the second part, the registered holder of the share or shares of stock of said Bank, represented by the within certificate of stock is entitled to a beneficial interest·in the capital stock of the Continental Corporation of New York (hereinafter referred to as the "Company"), from time to time held by the Trustees under said agreement, ratably with all other stockholders of the Bank, who have a beneficial interest in the capital stock of said Company, evidenced by certificates of stock of said Bank, from time to time outstanding, bearing an endorsement by the said Trustees or their successors, similar in all respects to this endorsement. The said beneficial interest is transferable only by the transfer on the books of said Bank of the shares of stock represented by the within certificate of stock.

"Frederick H. Horby,
"Andre de Coppet,
"Julian A. Acosta,
"Trustees.
"By ————
"Agent."

By the terms of this agreement the Corporation was organized to take advantage of certain opportunities for investment which the Bank was not able to take advantage of itself. It is apparent, while the Corporation was a separate corporation and entity, it was part of the Bank itself, just as if it was a branch thereof.

directors of the Bank. If a trustee ceased to be an officer or director of the Bank, he ceased to be a trustee. All of the Corporation stock was held in the name of the trustees, and they had all the authority and rights of owners. The name of the plaintiff did not appear on the Corporation stock. The Corporation stock was never delivered to an owner of the Bank stock, and as a matter of fact he was not entitled to the shares; he was merely entitled to the beneficial interest in a share of the Corporation stock, pro rata.

This beneficial interest in the Corporation could not be sold by itself, and could only be sold in connection with the sale of the Bank stock.

The plaintiff never purchased any shares of stock in the Corporation; his purchase was of Bank stock. He was not the owner of the Corporation stock, he had only a beneficial interest therein, which entitled him to his proportionate share of dividends, etc. The plaintiff never paid anything for the Corporation stock. I am satisfied that the Bank and Corporation was "one entity, inseparable, and so intrinsically entwined as would necessarily and practically make them one unit"; hence plaintiff's claim must be denied.

This precise question was passed on in the case of DeCoppet v. Helvering, 2 Cir., 108 F.2d 787, decided January 15, 1940, affirming 38 B.T.A. 1381. In that case certain stockholders of the Bank raised this same question. The only difference between that case and this one is that stock there was acquired in different ways. The general principle applicable to this case is there laid down.

The Circuit Court there said in sustaining the decision of the Board of Tax Appeals, in assessing a deficiency against the taxpayers upon their income tax for 1933: "The important matter is not what formal legal differences there were between the model adopted and the ordinary case of a corporate subsidiary; but whether the investment was single. It was if the investor could not have dealt with the parts separately; and these investors could not. When we speak of an investment, we do not think of the various ventures in which the company may be engaged, or of the various properties it may hold. We think of the unity which we must deal with as such, regardless of the particular legal paraphernalia in which it is clad. It is from that background that § 23(e) (2) speaks, and the Board was right in holding

that here there was but a single invest-ment."

I therefore dismiss the plaintiff's action for a refund on the alleged loss, allegedly sustained by reason of the worthlessness of the stock of the investment corporation in 1933; and I sustain plaintiff's action with regard to the Sahoff Building Company, Inc.

The parties have agreed that they will compute the amount of the refund due, so the Court will not concern itself with that detail.

Counsel for the defendant must prepare and submit to me through the Clerk's Office, findings of ultimate facts and the simple conclusions of law herein indicated in pursuance of Rule 52 (a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, in accordance with this opinion.

All proposed findings of fact and conclusions of law submitted to me must be typed in triple spacing so that I may conveniently correct them if I wish to do so.

Counsel for the defendant must give five days notice of his proposed findings of fact and conclusions of law to counsel for the plaintiff.

Counsel for the plaintiff, if he be so advised, may on the return day of such notice, submit to me and serve upon the defendant's counsel, criticisms of the findings of fact proposed by the defendant's counsel.

As under Rule 52(a), only findings of fact and conclusions of law which I sign will be filed as part of the record herein. I suggest this course for the plaintiff's counsel, because counter-findings will not avail him anything. He must take his objections, if any, to my findings by way of appropriate assignments of error on any appeal which he may take.