EARL R. WILKINSON AND GRAYCE WILKINSON, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 61977. Filed December 6, 1957.

*George H. Koster, Esq.*, for the petitioners.
*John D. Picco, Esq.*, for the respondent.

#### OPINION.

MULRONEY, *Judge:* Respondent determined a deficiency in the petitioners' income tax for the year 1953 in the amount of $109.38.

The sole question in the case is whether petitioner, a stockholder in a banking corporation, received a taxable dividend by virtue of a transaction wherein the bank transferred stock which it owned in a securities company to trustees for the benefit of all the bank stockholders.

All of the facts have been stipulated and they are hereby found accordingly. Petitioners Earl R. Wilkinson and Grayce Wilkinson,

husband and wife, are residents of Portland, Oregon. They filed a joint income tax return for the taxable year 1953 with the district director of internal revenue at Portland, Oregon. Earl R. Wilkinson will hereinafter be referred to as the petitioner.

In 1953 petitioner was a stockholder in the First National Bank of Portland, hereinafter called the Bank, holding 1,103 shares of the capital stock of said Bank. The Bank was organized in 1865 under the national banking laws. On January 20, 1953, it had outstanding 1,200,000 shares of common stock with a par value of $12.50 per share.

The First Securities Company, hereinafter called Securities, was incorporated on April 7, 1919, under the laws of Oregon. In 1931 the Bank acquired all of the capital stock of Securities and the latter remained a wholly owned subsidiary of the Bank until January 20, 1953. On that date Securities had 500 shares of stock outstanding. Securities performed functions which the Bank itself was not able to perform under the national banking laws, such as the liquidation of assets acquired by First National through foreclosures on loans, the purchase of residence properties for rental to employees of the Bank, and the acquisition of other property which the Bank itself could not acquire but which would inure to its interest. Its assets on January 20, 1953, consisted of cash, contracts and loans receivable, stocks and bonds, assigned life insurance policies, and real estate. The fair market value and the adjusted book value of the net assets of Securities on January 20, 1953, was $310,000. The income of Securities in 1953 consisted of rentals, interest, dividends, and gain from the sale of properties. The earnings and profits of Securities for the year 1953 exceeded $350,000.

At the regular annual meeting of the shareholders of the Bank held on January 20, 1953, the shareholders took action with regard to Securities stock, as recorded in the minutes of said meeting, wherein they approved a plan to have the Bank transfer all of the shares of Securities to the five directors of the Bank acting as trustees, under a trust instrument, for the pro rata benefit of the stockholders of the Bank. Immediately after the stockholders' meeting the directors of the Bank held a directors' meeting and took action as recorded in the minutes of said meeting, directing the transfer of the 500 shares in Securities to the named Bank directors as trustees under the trust instrument prescribed by the resolution of the stockholders' meeting. On the same date the trust instrument was executed between the Bank and the trustees and the stock in Securities was transferred thereunder to the trustees. The trust instrument provided, in part, as follows:

1. Said shares of stock shall be held by the Trustees as joint tenants and not as tenants in common. The Trustees may and shall exercise all the rights.

powers and privileges of absolute owners of said stock, including, but not limited to, the right to vote the same for any purpose whatsoever, to receive and receipt for any and all dividends, liquidating or otherwise, to sell, assign or transfer said stock or any portion thereof or any interest therein or any proceeds or other assets of any kind derived therefrom, provided that any action so taken, whether in the election of Directors, the sale or other disposition of the assets of this trust or otherwise, shall have been first authorized by beneficiaries owning at least a majority of the beneficial interests in the assets of this trust, or such other percentage as may be hereinafter prescribed, evidenced in the manner stated in this agreement.

2. (a) The beneficial interest in said shares of stock of The First Securities Company shall be and is vested ratably in all of the shareholders of the Bank (hereinafter sometimes referred to as the beneficiaries) in the same proportion as they shall from time to time own of record stock of said Bank.

(b) Such beneficial interests may be sold, transferred or assigned only by the ratable transfer upon the books of the Bank to the same transferees of the same proportionate number of shares of stock of the Bank itself, but such beneficial interests shall not be and are not capable of separate transfer or assignment, either voluntarily or involuntarily, or in any other manner or by any other means than that herein specifically prescribed.

(c) At any and all times when, as stockholders of the Company, the Trustees shall receive dividends either from the profits of the Company or from liquidating dividends, partial or final, or from the sale or other disposition of the stock of the Company, the Trustees shall distribute such dividends or cause the same to be distributed to the beneficiaries ratably in accordance with their respective interests in the assets of this trust, determined in the manner prescribed by this agreement. If and when any dividends are declared by the Directors of the Company the Trustees may, instead of receiving and distributing them as herein provided, authorize and empower the Company to make such distribution direct to the beneficiaries in accordance with their respective interests therein, in which event the Trustees shall be relieved of further responsibility therefor.

\* \* \* \* \* \* \*

6. Meetings of the beneficiaries may be called and held in the manner following:

\* \* \* \* \* \* \*

(b) Meetings of the beneficiaries may be called by the Trustees at any time upon giving the notice hereinafter prescribed. Upon the written request of the then owners of record of at least ten per cent (10%) of the beneficial interests then outstanding, the Trustees shall call a meeting to be held at such time and place as they may deem appropriate, but at all events not more than thirty (30) days after receipt of such request. In the event of the failure, neglect or refusal of the Trustees so to do, the then owners of not less than ten per cent (10%) of the beneficial interests then outstanding shall be entitled to call the meeting by giving notice as hereinafter provided.

\* \* \* \* \* \* \*

(d) Voting at such meetings may be in person or by proxy. Any number of persons beneficially interested hereunder, together owning a majority of the beneficial interests in the stock held in this trust, who shall be present in person or represented by proxy at such meeting shall constitute a quorum for the transaction of business. The affirmative vote of the persons present, in person or represented by proxy, owning at least a majority of the beneficial

interests in the stock held hereunder shall be necessary for the transaction of all business and for the adoption of all resolutions, except where a different percentage vote is prescribed hereunder.

\* \* \* \* \* \* \*

7. (a) This trust or the terms and conditions of this agreement may be amended, modified or terminated at any time by the affirmative vote of the then owners of not less than ninety per cent (90%) of the outstanding beneficial interests in the assets of this trust. Such vote shall be at a meeting of the beneficiaries called and held in the manner hereinbefore provided. Such amendment, modification or termination shall become and be effective thirty (30) days after the date of the meeting of beneficiaries at which the favorable affirmative vote was taken.

\* \* \* \* \* \* \*

(c) In the event of termination of said trust the assets contained therein shall be promptly distributed by the Trustees to the then beneficiaries of the trust, comprising all of the stockholders of the Bank on the effective date of termination of the trust, on a pro rata basis in proportion to their ownership of beneficial interests in the trust.

No papers were distributed to the stockholders of the Bank evidencing their beneficial interest in the stock of Securities. The stockholders received nothing they could dispose of separately from the stock of the Bank. No notation was made on the Bank stock certificates evidencing a beneficial interest in the stock of Securities.

Respondent determined the foregoing transaction constituted the distribution to the petitioner and the other Bank stockholders of a dividend in kind, consisting of all of the stock in Securities within the meaning of section 115 (a) of the Internal Revenue Code of 1939,[1] on the basis of a fair market value of Securities stock on January 20, 1953, of $310,000, which determination accounts for the deficiency involved.

Petitioner did not include any amount in his income for 1953 on account of this transfer by the Bank of Securities stock to the trustees. Petitioner's argument is that the transfer did not result in any income to him because such transfer "effected merely a change in form in one of petitioner's investments but did not separate or liquidate that investment, nor did it afford any possibility for the realization of any monetary or proprietary gain of any kind," and that, in any event, even if such transfer were deemed to be a distribution of property to the petitioner, there would be no tax consequences because the property so distributed had no fair market value. In the alternative, petitioner argues that the effect of the transaction of January 20, 1953, was either (1) a nontaxable spin-off within the meaning of section 112 (b) (11), or (2) a nontaxable exchange under section 112 (b) (3).

---

[1] All section references are to the Internal Revenue Code of 1939, as amended, unless otherwise noted.

It is the substance of a transaction that determines whether a corporate distribution constitutes a dividend. And the liability of a stockholder for income tax on a corporate distribution depends basically upon whether that distribution constitutes income to him. *Coudon* v. *Tait*, 56 F. 2d 208. In *United States* v. *Phellis*, 257 U. S. 156, it was pointed out: "The liability of a stockholder to pay an individual income tax must be tested by the effect of the transaction upon the individual." Income is something that comes to a taxpayer, so the basic question is whether the receipt by petitioner of the beneficial interest in Securities stock increased his income for that year. We hold it did not and the transaction did not amount to a dividend distribution taxable to petitioner.

The device here involved seems to be a plan often put forward by banking corporations to allow a bank's shareholders to take advantage of what the bank feels is proper banking business, which the bank as an entity cannot avail itself of. It accomplishes all of the advantages of a subsidiary for the bank without the usual shareholding of a subsidiary. But the adoption of the plan of trusteeing the stock of the corporation and locking the beneficial interest in the stock to the bank shares, results in no realization of income to the bank shareholders when the stock in the corporation was formerly owned by the bank. The share of bank stock represents to the bank shareholder substantially the same beneficial ownership in the same assets both before and after the transaction.

The plan in the instant case was adopted to meet the requirements of the Comptroller of the Currency. It was a plan whereby the Bank would rid itself of Securities, its wholly owned subsidiary, and still retain for its stockholders the benefits that had resulted from its being a Bank subsidiary. Evidently such a transfer satisfied the requirements of the Comptroller but a realistic look at the transaction shows that to all intents and purposes Securities was retained by the Bank as an available medium to perform the same auxiliary business functions as were performed by it before the transfer.

From the Bank stockholders' position, it is difficult to see how any change resulted from the transfer that gave rise to the realization of gain. Petitioner's investment was, in substance, exactly the same after the transaction as before. Before the transaction, petitioner's investment and the investment of all the Bank shareholders might be said to be direct ownership of the stock of the Bank and solely by reason of such ownership, indirect ownership of the stock of Securities. After the transfer, petitioner and the other Bank shareholders had the same investment, namely, direct ownership of the Bank stock and solely by reason of such ownership, indirect or beneficial ownership of the stock of Securities. While in form there was a severance of Securities stock from the Bank assets, the petitioner and the other

stockholders in the Bank received nothing they did not have before, as a result of the transaction. The beneficial ownership of the stock of Securities, after the transaction, was still locked into ownership of the Bank stock. It was still a pro rata interest depending upon ownership of the Bank stock. That beneficial interest could not be transferred without transfer of the Bank stock. If, the day after the transfer, petitioner had sold his Bank stock, he would have transferred substantially the same investment as to Securities stock as if the transfer had been made the day before.

Respondent cites a line of cases where a bank has declared a cash dividend, or a dividend consisting of surplus assets, which by agreement of the bank's shareholders was paid over to trustees for the purpose of organizing a corporation to transact business in which the bank could not engage. There, too, the stock in the new corporation was to be held in trust for the bank's shareholders, and its disposition was tied to existing stock ownership in the bank. Respondent cites *John G. Lonsdale*, 11 B. T. A. 659, affd. 32 F. 2d 537, certiorari denied 280 U. S. 575; *Mrs. Frank Andrews*, 26 B. T. A. 642; *Walter Hopkins*, 27 B. T. A. 1331; and *Sara A. Twohy*, 34 B. T. A. 444.

The foregoing cases are not in point. There the income is realized by the payment of the cash dividend to or for the bank shareholder. The fact that, by prior agreement, the shareholder's cash dividend was diverted to the purchase of stock was immaterial. As said in *Lonsdale* v. *Commissioner*, 32 F. 2d 537, 539 (affirming *John G. Lonsdale*, 11 B. T. A. 659) :

Appellant [bank shareholder] received a distinct individual gain by the declaring of the dividend in question. The fact that he did not receive the cash in hand, but permitted the cash dividend thus declared to be used in the purchase of stock in another distinct corporation, did not alter the substantial effect of the transaction; * * *

In the above-cited cases the bank shareholder received something new that was purchased with his cash dividend. Here what the Bank shareholder received was substantially the same beneficial interest in Securities stock that he had before the distribution.

Petitioner cites *Moore* v. *Hoey*, 31 F. Supp. 478; *De Coppet* v. *Helvering*, 108 F. 2d 787, affirming *Andre DeCoppet*, 38 B. T. A. 1381; and *Commissioner* v. *Hagerman*, 102 F. 2d 281, affirming 34 B. T. A. 1158. These are cases where substantially the same plan as here was employed by banks to secure an arrangement for an investment affiliate. There the bank stock carried with it the ratable beneficial interest in trusteed stock for an investment company dealing in securities that were unlawful for banks. There, as here, the bank directors were the trustees and the stock in the investment company was in the name of the trustees, with the beneficial interest in the bank shareholders. This beneficial interest could not be transferred sepa-

rately and it was automatically transferred with the transfer of the bank stock. In these cases it was held no deductible loss was realized by a bank shareholder where his beneficial interest in the investment company was extinguished with its dissolution with no assets to distribute in liquidation. While the question was quite different in the above-cited cases, the principle on which the decisions rest is of interest here. The general principle laid down in the cited cases is that bank stock and the beneficial interest in the investment company represented a "single" investment and if there were any differences between the trustee plan and the usual shareholding of a subsidiary, they were merely formal. As Judge Learned Hand said in *De Coppet* v. *Helvering, supra*, "For all purposes except conformity with banking requirements the result was, however, substantially the same as though the Bank itself held the shares." The formal legal differences that exist between the usual shareholding of a subsidiary and the trustee shareholding here involved are unimportant when the inquiry is whether the transfer shall be deemed a taxable transaction for the shareholder. Where the transfer to the trustee is made under an agreement which limits the rights and privileges of the shareholders of the bank to substantially the same rights to the stock of the bank's subsidiary as existed before the transfer, no taxable dividend to them occurs by reason of the transfer.

Respondent makes much of the point that the trust agreement provides no action can be taken by the trustees without the consent of a majority of the holders of the beneficial interests. This, respondent argues, shows that the stock was in effect transferred from the Bank to the Bank's stockholders who thereby became free to control the stock. This same argument was rejected in *De Coppet* v. *Helvering, supra*, where the court said (p. 788) :

The beneficial interest was as much an appurtenance of the bank shares as an easement is of the servient tenements; it merely gave them an added value, precisely as it would have done, had the Bank been the shareholder. Collectively the same persons must always be equitable owners of the investment shares and shareholders of the Bank, and in the same proportion; there never could be one group holding bank shares, and another holding investment shares. So far as a corporation is the aggregate of its shareholders in respect of their collective rights and obligations, there was but one corporation.

We do not see why the situation was different because the bank shareholders could modify the trust by a two-thirds vote, if the trustees agreed; and could terminate it by a three-fourths vote, if they did not. * * *

The authority of the Bank shareholders as beneficiaries was no greater than the authority which they possessed with reference to the Securities stock when it was held as an asset of the Bank. The Bank shareholders by collective action of a majority could have controlled the Securities stock when it was an asset of the Bank, though the exercise of that power might be limited to the election of a new board.

The Bank and its stockholders had the right, for good business reasons, to impose restrictions on the transfer which would render it no more than formal; which would leave the Bank stockholders substantially the same rights in the transferred stock as they held before. As long as that kind of a transfer satisfied the Comptroller, the whole purpose of the transfer was accomplished. But such a transfer involves no change in substance as to the rights of the petitioner as a Bank shareholder in the Bank asset transferred, which could be an occasion for determining a taxable gain. We hold the transfer of Securities stock of January 20, under the trust agreement, did not result in a distribution by the Bank of a dividend in kind.

Our holding for petitioner eliminates the necessity for our considering the issue as to the market value of Securities stock on the date of the transfer, and the alternate arguments made by petitioner that if he did receive a dividend distribution, it was a nontaxable distribution within the provisions of section 112 (b) (11) or a nontaxable exchange of securities under section 112 (b) (3).

*Decision will be entered for the petitioners.*