JOSÉ H. BELAVAL, ETC., Petitioner, *v.* COURT OF EMINENT DOMAIN OF PUERTO RICO, Respondent.

No. 1809. Argued February 1, 1950.—Decided April 25, 1950.

E. T. *Fiddler*, José G. *González*, and Tomás I. *Nido*, for petitioner. Vicente *Géigel Polanco, Attorney General,* J. B. *Fernández Badillo, Assistant Attorney General,* and Baldomero *Freyre, District Attorney, of San Juan,* for intervener, plaintiff in the main action.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

Upon filing a complaint in a condemnation proceeding for the acquisition of the land which was to be devoted to the International Airport, the People of Puerto Rico deposited in the office of the clerk of the Eminent Domain Court the sum of $32,956.79 as a just and reasonable compensation for a property of 20 cuerdas which was held by José H. Belaval as

trustee by virtue of a trust created by Gonzalo Aponte and his wife for the benefit of their minor children Mary Marta, Gonzalo Mario, and Rose Marie Aponte Otero.

José H. Belaval in his capacity as trustee requested the delivery of the deposited funds, to which the People of Puerto Rico consented, but the Eminent Domain Court refused to do, issuing two orders. The first, based on the fact that since the trust was created in favor of certain minors, it was necessary for the trustee to request judicial authorization subject to the intervention of the prosecuting attorney of a court with jurisdiction to determine the investment to be made of the money "for the purposes covered by the trust deed which may be advisable for the beneficiary minors of the trust fund," and the second, that although the trust was created on December 20, 1945, certain clauses were included in favor of the conceived but unborn Rose Marie Aponte Otero, who was born on July 7, 1946, after the effective date of Act No. 303 of April 12, 1946, to levy taxes on inheritances and gifts, and which includes within the term "gifts" any transfer in trust, it being necessary therefore, for the withdrawal of the funds, to present in the Eminent Domain Court a certificate of the Treasurer of Puerto Rico showing the payment of the tax.

To review these orders we issued certiorari in this case.

## I

 Is the prior authorization of the court with the intervention of the prosecuting attorney necessary in a case of this kind? We do not think so. In the first place, we turn to examine briefly the deed of declaration of trust. The parties to said deed are Gonzalo Aponte and his wife and José H. Belaval. The Aponte spouses declare that they are the parents of the minors Mary Marta and Gonzalo Mario Aponte and also that they have conceived another child; that they are owners of several properties described in the deed, among them the property condemned; that in order to provide for the welfare of their minor children, and of

the conceived but unborn child and in order that each child be financially independent, they declare the creation of three irrevocable trusts for a term which shall not exceed 30 years pursuant to Act No. 41 of April 23 of 1928, §§ 834 to 874 of the Civil Code, 1930 ed., and to that effect they assign and transfer the property listed in the deed to José H. Belaval, designated by them as trustee, said transfer to be subject to the condition that the property which is tranferred as well as those which may be transferred in the future, shall constitute separately and by equal shares three trust funds under the administration of the trustee, to whom they confer, among others, the following powers:

"THE TRUSTEE shall be expressly authorized to preserve the property held in trust, and he shall have full power to invest, reinvest, sell, lease, transfer, and barter for other goods or property of any kind under those transactions, covenants, and agreements which he may deem proper, all or part of said property, as well as to barter, if he deems it advisable, any investment or to invest and reinvest any remainder or sum received in any barter or sale of any obligation, credits or securities or any property, real or personal, corporal or incorporeal, public or private, domestic or foreign, including common or preferred shares of stock of private or public service corporations or of any property no matter that the latter fails to produce any income, profit or benefit at the date of its acquisition.

"He shall be also fully authorized, using his discretion and good judgment, to convert from time to time or when he may deem it wise, all or part of the trust fund into cash. He shall be unrestrictedly authorized to select those investments and properties which he may deem wise to acquire for the preservation of the trust fund."

The deed contains other clauses, under which the trustee is assigned other powers, such as the distribution of profits, substitute trustees, the fact of not having to file undertakings, delegation of his vote in connection with certain corporate stocks, etc., and lastly, the creation of three independent trust funds for each one of the three children.

On September 12, 1946, and by virtue of deed No. 167 executed before notary Diego Guerrero Noble captioned Notarial Certificate, the Aponte spouses and José H. Belaval appeared, the former stating that by Deed No. 217 for Declaration of Trusts, executed before the same attesting notary, they had created three irrevocable trust funds, separate and independent, it being stated in the foregoing Deed No. 217 that trust number three would belong to a child which at the date of the execution thereof—December 20, 1945—was conceived but not born; that the latter was born July 7, 1946, a girl, who at that time and in the event it were a girl would be known as Manuela Aponte Otero but that now she would be named Rose Marie Aponte Otero. They forthwith stated "that trust number three created by them in favor of 'unborn child' according to deed No. 217 for Declaration of Trust executed on December 20, 1945, before this attesting notary has been since that date substituted in favor of their daughter Rose Marie Aponte Otero for all legal purposes." Deed No. 217, as well as the explanatory deed, were recorded in the Registry of Property.

The reasons stated by the lower court for denying the delivery to the trustee of the sum deposited by the People of Puerto Rico in this case are the following:

"The delivery of the sum of money deposited by the People of Puerto Rico to the trustee constitutes the partial consummation as to the price involved, of the forced alienation in this condemnation proceeding. To alienate is to convey or transfer to another the ownership of a thing or any right thereon. The interest that the beneficiary minors had in the real property covered by the trust, due to the condemnation proceeding has passed to be accordingly an interest in part of the money received for the condemnation of the property held in trust. The sole consent of the father with *patria potestas*, given in the name of his minor children, for the delivery of the money requested, is not enough for since it is a question, as in fact this Court thinks

it is, of delivery of money over which the defendant minors have a right and interest, it seems to us that the provisions of law comprised in §§ 614 et seq. of the Code of Civil Procedure of Puerto Rico are clearly applicable."

The lower court also stated that pursuant to §§ 834 to 874 of the Civil Code, 1930 ed., regarding the creation of trusts,[1] it does not appear "that the trustee is at all times exempt from the supervision of the District Court, with respect to the property and rights of the beneficiary minors," and accordingly, held that the trustee should obtain from the lower court or any other competent court with jurisdiction, the corresponding judicial authorization, with notice to the district attorney, in order that the money be delivered to him, as we stated before, "for the purposes covered by the trust deed which may be advisable for the beneficiary minors of the trust fund."

This order is in open conflict with the basic concept of the creation of trusts brought to Puerto Rico by the Act of 1928, which is an adaptation from the one enacted in Panama in 1925 following the Anglo-Saxon system of "trusts."[2] In accordance with § 834 of the Civil Code, 1930 ed., "A trust (*fideicommissum*) is an irrevocable mandate whereby certain property is transferred to a person, named the trustee (*fiduciario*), in order that he may dispose of it as directed by the party who transfers the property, named constituent

---

[1] These Sections were incorporated in the Civil Code of 1930 taking them *verbatim* from the Sections of Act No. 41 of April 23, 1928 to provide for the constitution of trusts and to them we shall further on refer rather than to the Sections of said Act.

[2] See The Problems of Trust Legislation in Civil Law Jurisdictions: The Law of Trusts in Puerto Rico, by Luis F. Sánchez Vilella, 19 Tulane Law Review 374; Trust Systems in the Western Hemisphere, by Ruford G. Patton, 19 Tulane Law Review 398; *El Futuro de la Legislación de Fideicomiso*, by Ruford G. Patton, 17 *Revista Jurídica de la Universidad de Puerto Rico* 221. These essays show that it was Dr. Ricardo J. Alfaro of Panamá who drafted the bill which subsequently became Act No. 9 of 1925 for the creation of trusts in said republic and that Atty. Miguel Guerra Mondragón, while he was Vice-President of our House of Representatives was the author of the bill which later became Act No. 41 of 1928, *supra*, and which with some modifications, was taken from the Panama Act.

(*fideicomitente*), for his own benefit or for the benefit of a third party, named the beneficiary (*cestui que trust*) or (*fideicomisario*)."

Section 849 of the same Code provides that:

"The legal existence of a trust shall begin at the time when the trustee accepts the mandate and, once accepted, the mandate becomes irrevocable. The acceptance may be express or implied, the implication being based on the acts of the trustee in furtherance of the trust.

And §§ 864, 865, 866, and 867 provide as follows:

"Section 864.—The trustee shall not be obliged to give surety of good management, unless it be by decree of the court of competent jurisdiction issued as a precautionary measure at the request of the district attorney, of the constituent, of the *cestui que trust,* or of the legitimate ascendants of the last named when such *cestui que trust* is not in existence though his existence is expected; *Provided,* That the expenses of such bond shall be a proper charge against the trust funds or trust property.

"Section 865.—The trustee shall have all the rights and actions inherent in fee-simple ownership; but he shall not have power to convey or encumber the trust property, unless he has express authority therefor or unless the execution of the trust is impossible without alienating or encumbering the property.

"Section 866.—The trustee shall not dispose of the trust property in a manner contrary to, or different from, the one established in the trust.

"Section 867.—The trustee shall be removed from his charge by order of a court of competent jurisdiction:

1. Should his personal interest be opposed to those of the *cestui que trust;*

2. Should he squander the trust property or manage it fraudulently or neglectfully;

3. Should he become incapacitated or disqualified.

"The removal of the trustee may be requested by the constituent, by the *cestui que trust,* or by the district attorney, the last named in the defense of minors or of persons incapacitated to manage their property, or in the interests of the law or public morals."

According to the above provisions the error committed by the lower court is evident in holding that for the investment of the property held in trust the trustee should follow the procedure provided by §§ 614 *et seq.* of the Code of Civil Procedure, wherein, according to the Civil Code, the parents or the tutors of minors or of incapacitated persons need judicial authorization to do anything relative to the keeping of said minors or incapacitated persons or their property.[3] These cases deal with property belonging to minors or incapacitated persons. In trusts the property which belonged to the settlor has been conveyed to the trustee, who has all rights and interest corresponding to the *full ownership*, with the only restriction that the transfer is made in accordance with the mandate of the settlor for the benefit of the beneficiary. Section 865, *supra*, expressly provides that the trustee "shall not have power to convey or encumber the trust property, unless he has express authority therefor or unless the execution of the trust is impossible without alienating or encumbering the property." And in the instant case we have seen the ample powers granted by the settlors to trustee Belaval to sell, encumber, and invest the property of the trust. The fact that a property held in trust has been condemned does not imply that the reasonable value, once deposited in the court, has been excluded from the *corpus* of the trust so as to compel the trustee to obtain authorization from the court in order to invest said sum of money. The title to the property transferred in trust is vested on the trustee and it is so recorded in the Registry of Property subject to the terms of the trust and not on the beneficiary minors in this case. The latter are only entitled to receive said property in the future at the

---

[3] These cases are those provided by §§ 159 and 212 of the Civil Code, 1930 ed., in connection with the prohibition to alienate or encumber real property of any class whatever; or personal property, the value of which exceeds five hundred dollars or two hundred dollars, respectively, without the previous authorization of the court.

termination of the trust.[4] Regarding the situation herein it is stated in 1 Nichols On Eminent Domain 344: "In the case of an express trust however, it is the trustee, the holder of the legal title, and not the beneficiary, who is recognized as the owner in eminent domain proceedings and awarded compensation, the compensation in such case taking the place of the land and being held subject to the same trust."

The party actually interested in obtaining the money deposited in the condemnation proceeding is not the minors but the trustee, since he is the person bound to maintain any action arising in consequence of said proceeding. 2 Scott On Trusts, § 281, p. 1565.

As we have already stated the title to the property is held by the trustee—the minors only having an equitable interest —and if the trustee is bound by the terms of the contract which he expressly accepted, since he is not liable under § 862 of the Civil Code, "for any error of judgment, mistake of fact or of law, or act or omission, except his own wilful default or manifest negligence," and if his powers and duties are expressly set forth in the trust deed, the district attorney has no intervention in a situation like the one herein, which concerns only the delivery to the trustee of the sum of money which forms part of the property transferred in trust. The statute specifies the cases when the district attorney and the court may interfere, to wit, those enumerated in §§ 860, 864 and 867, *supra*. The courts are reluctant to interfere in trust cases unless, minors and incapacitated persons being involved, the property constituting the *corpus* of the trust runs grave risk of being squandered by the trustee, or if the latter goes beyond the limits of the discretion conferred upon

[4] Section 868 of the Civil Code provides:

"It shall be the duty of a trustee, upon extinction of the trust, to dispose by proper conveyance of all trust property remaining in his control or possession in accordance with the terms of the trust indenture, of the agreement, or of a decree by the court of competent jurisdiction, whereby such trust is extinguished."

him or if he acts in bad faith. 2 Scott, *op. cit.*, § 187, p. 986 None of these circumstances are present in this case and it would not be proper for the Eminent Domain Court to interfere if they had arisen. As is stated in the last citation of Scott:

"By the terms of the trust it may be left to the discretion of the trustee whether or not to exercise a power; or where he is directed to exercise the power, the time and manner of its exercise may be left to his discretion. To the extent to which the trustee has discretion, the court will not control his exercise of it as long as he does not exceed the limits of the discretion conferred upon him. The court will not substitute its own judgment for his."

In 1 Restatement of the Law of Trusts, § 187, p. 479, the rule is set forth as follows: "Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion." And in the commentary (*c*) of said rule it is stated: "Thus, it is applicable not only to powers to lease, sell or mortgage the trust property or *to invest* trust funds, but also to powers to allocate the beneficial interest among various beneficiaries, to determine the amount necessary for a beneficiary's support, or to terminate the trust."

Therefore, the lower court erred in attempting to subject the funds deposited in the condemnation proceeding, to the utility and necessity proceeding in connection with the alienation or encumbrance of property of minors or incapacitated person provided in §§ 614 *et seq.* of the Code of Civil Procedure in connection with §§ 159 and 212 of the Civil Code.

II

The other order of the lower court held that since one of the beneficiaries of the trust created on December 20, 1945 was a child of the settlors, conceived but not born on that date, but subsequently born on July 7, 1946, after the

effective date of Act No. 303 of April 12, 1946 which levies a tax on inheritances and gifts, it being included within the term "gift" any transfer in trust, it was necessary to file in said court a certificate of the Treasurer of Puerto Rico showing payment of the tax before the trustee could withdraw the funds deposited in the condemnation proceeding.

In fact § 1 of Act No. 303 of 1946 provides in part, that: "Gifts also include any transfer in trust (*fideicomiso*)." However, when was the "transfer" of the properties held in trust in the instant case made to the trustee? There is no doubt that it was on December 20, 1945, before Act No. 303 took effect. Section 845 of the Civil Code expressly authorizes the creation of a trust in favor of the "future children of the settlor." Does the fact that the child Rose Marie was born after Act No. 303 went into effect, presuppose that the transfer to the trustee of one third of the trust allotted to her did not take place when the trust was created? We do not think so. It should be recalled that in the trust deed it was stated that "in the unfortunate event of a miscarriage producing the death of the unborn beneficiary, the *corpus* of the TRUST, jointly with the accumulated profits, shall immediately pass to the other TRUSTS (sic) share and share alike." Therefore, whether or not the conceived child were born the trust came into existence immediately upon the execution of the deed in 1945. All the properties included in trust were transferred to the trustee. Thus, for example, the profits realized from that third part of the properties were subject to the payment of the income tax by virtue of § 20(a)(1) of the Act on the matter.[5] And subdivision (b)

---

[5] Said Section provides the following:

"Section 20.—(a) The tax imposed by Parts I and II of this title shall apply to the income of estates or of any kind of property held in trust, including—

"(1) Income accumulated in trust for the benefit of *unborn or unascertained* persons or persons with contingent interests, and income accumulated or held for future distribution under the terms of the will or trust." (Italics ours.)

of that same Section imposes on the trustee the duty of making the payment. Any profit produced by the whole *corpus* of the trust was subject to the payment of the corresponding tax.

If the trust was created in December 1945 and on that same day the properties were transferred to the trustee, although as to the one third pertaining to the trust fund of the conceived but unborn child the latter could not have, before being born, the equitable title or beneficial interest which belongs to every beneficiary, we are of the opinion that since the other two children of the settlors were the future beneficiares of the trust created in favor of the unborn child, if it was not born, a resulting trust was created in favor of the other two children already born, who had the equitable title until daughter Rose Marie was born. In such cases the terms in which the trust instrument is drafted are controlling. In 1 Scott On Trusts, § 112.1, pp. 581, 582, it is stated:

"Where property is transferred in trust for an unborn child, it depends upon the terms of the trust as to who is entitled to the beneficial interest until the child should be born. It may be provided that the income should be accumulated until the child is born, or it may be provided that the trustee should be entitled to the beneficial interest until the child is born, or it may be provided that the settlor should be entitled to the beneficial interest. In the absence of any such provisions, either in express words or otherwise, the inference is that the trustee holds upon a resulting trust for the settlor."

The present case is distinguished from the above situations, (1) because the trust was created in favor of two children born and one conceived, (2) because the deed clearly expressed the intention of the settlors that the trust created in favor of the unborn child would revert to the other two children in its entirety. Therefore, it was not their intention that the equitable title thereto be vested on the settlors until the birth of the third child, but rather on the two children already born.

The power to designate as beneficiary an unborn child is a common provision in trust statutes and if ours is different it is only in that it is limited to future children of the settlor.[6] In 1 Restatement of the Law of Trusts, § 112, comment (d), p. 290, the prevailing rule in the United States is set for thus:

"*Unborn children.* A child who has not been born or conceived at the time of the creation of a trust can be a beneficiary of the trust. If the interest is to vest in the child within the period of the rule against perpetuities, the trust is valid if the other requirements for the creation of a trust are complied with."

The fact that in this case the enjoyment of the beneficial interest is postponed until the child is born does not affect the validity and creation of the trust when, as in the instant case, the intention of the settlors of conveying said interest to the other two children as beneficiaries [7] was stated in the deed. The trust is created immediately upon the execution of the deed even when the beneficiary is an unborn child under the theory that ". . . creating an immediate resulting trust for the settlor (which will cease if the expected child is born) with an express trust for the child springing up when and if such child ever materializes." *Morsman* v. *Commissioner of Internal Revenue*, 90 F. 2d 18, 24 (C.A. 8, 1937), certiorari denied in 302 U. S. 701, citing Bogert, Trusts and Trustees, § 163.[8] The case of Morsman was one in which a bachelor created in 1929 a trust naming himself trustee and providing that he would also be the beneficiary during his lifetime and that at his death the beneficiaries would be his wife, issues, or heirs and that a banking institution would be the trustee after January 1, 1939. Morsman carried out certain transactions with stocks which formed part of the property held

---

[6] Sánchez Vilella, *op. cit.*, p. 393, suggests that our Act should be amended to conform it to § 112, comment (d) of the Restatement of Trusts.

[7] Restatement, Trusts, § 26, comment (g), p. 83.

[8] See 51 Harv. L. Rev. 176; 38 Columbia L. Rev. 195.

in trust before conveying the latter to the bank on May 3, 1929. A tax was assessed on the profits realized from said transactions to Morsman individually and not to the trustee. The action of the Commissioner of Internal Revenue was sustained by the Board of Tax Appeals as well as by the court, under the theory that no trust had been created due to the fact that the original trustee, Morsman, and the beneficiary were one and the same person, it being stated at pages 23–24: ". . . it is settled that a trust cannot exist where the same person possesses both the legal and equitable titles to the trust fund at the same time. In such a case the two titles are said to merge. (Citations) . . ." It was argued that as the wife, issues, or heirs of the settlor, had been designated as future beneficiaries, the trust had been perfected since its creation. The court rejected this contention and after citing Bogert, *supra*, stated:

". . . In such a case, where the trustee is a third person, if no child is born within the period of the rule against perpetuities, the legal and equitable interests both merge in the settlor at the end of the period; but, if the settlor is himself the trustee, the two interests are not severed by the purported declaration. The law of trusts upon this point seems clear. The immediate resulting trust in favor of the settlor is but a specific application of the general rule which recognizes the existence of the resulting trust in favor of the settlor in cases where the legal title is taken by one who is not intended to have the beneficial interest *and the beneficial interest is not otherwise effectively disposed of.* (Citations) So if A, a bachelor, transfers property to B in trust to accumulate the rents and profits and to convey the same to A's eldest son on reaching its majority (Trusts, Restatement, § 112, Illustration 6), *a trust will arise at once*—B now holding as a resulting trustee for A with the express trust arising if and when the eldest son comes into existence—the resulting trust then to cease. But in that view if A, a bachelor, or any person without issue declares himself trustee of property for his own eldest son on identical or similar terms, *no trust will presently arise.* The express trust for the child cannot arise until the child comes into existence, and A cannot hold as a resulting trustee for himself during his lifetime because of the necessary

merger in such a case of the legal and equitable interests in the same person. If A should die without issue under these circumstances, the property constituting the so-called trust fund is as much a part of his estate as if he had never made the purported declaration. The distinction thus noted between the case where A declares himself trustee for his unborn issue and where he conveys to B to hold in trust for such issue *is vital;* and this is the point at which Morsman failed in his attempt to create a present trust. ... There are thus limitations to the oft-quoted rule that *a present trust may arise although the express beneficiary is not in existence.* The application of that rule to every case in which the purported beneficiary is unborn disregards 'the perils that are latent in "a jurisprudence of conceptions." ' Schubert v. August Schubert Wagon Co., 249 N. Y. 253, 164 N. E. 42; 64 A.L.R. 293. . . .[9]

"It has been said that 'If a beneficiary of a trust has not been born or conceived, a suit can be maintained on his behalf by a next friend or guardian to enforce the duties of the trustee.' Trusts, Restatement, § 214, comment (*a*). The rule is illustrated by cases where other members of the class to which the unborn issue belong· are already in existence, Trusts, Restatement, § 120, or where the owner has conveyed the property to a third person to hold for such issue, Trusts, Restatement, § 112, comment (*d*). These cases are instances in which there occurs for other reasons a present severance of the legal and equitable titles thus giving rise independently of any assumed rights of unborn issue to a trust and thereby giving to courts of equity, which traditionally exercise control over trusts, jurisdiction from the beginning; and having acquired jurisdiction the court retains it to protect rights which may later spring up, Trusts, Restatement, § 340, comment (*d*). In other words the foregoing rule applies where, apart from the naming of the unborn issue, there is some rational explanation of a present trust. . . ." (Italics ours.)

We have cited at length from the opinion in the *Morsman* case because it sets forth with clearness and on authorities the rules applicable to different situations in which the beneficiary

---

[9] The phrase "a jurisprudence of conceptions" was originally cited by Judge Cardozo in *Hynes* v. *New York Cent. R. Co.*, 231 N. Y. 229, 131 N. E. 898, 900, taking it from the essay Mechanical Jurisprudence by Roscoe Pound, 8 Columbia L. Review, 605, 610.

of a trust is an unborn child of the settlor. Said rules, applied to the case at bar, support our conclusion that the trust in favor of the child conceived but not born under the terms of the deed executed by the settlors was created at the time of its execution on December, 1945, and that the taxable event arose on said date, that is, prior to the effectiveness of Act No. 303, *supra*.

The contention of the intervener is contrary to the applicable rule. The legal existence of the trust begins from the time the trustee accepts the mandate, which renders it irrevocable. Section 849, *supra*. The trustee in this case accepted the mandate in the same deed in which the trust was created in December 1945, on which date the property was transferred to him. The "transfer in trust" constitutes the taxable event for the purpose of the gift as defined by § 1 of Act No. 303, *supra*, and it took place, as we have already stated, prior to the taking effect of the statute.

As stated above, the money deposited in the condemnation proceeding substitutes the condemned lands. Likewise it cannot be considered that said money is being transferred now to the trustee to make it fall within the purview of Act No. 303.

The orders issued by the lower court will be reversed and the money deposited is ordered to be delivered to trustee José H. Belaval.

